[No. 25571.   Department One.   August 12, 1935.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES LOWENTHAL, *Appellant.*[1]

[1]Reported in 48 P. (2d) 909.

*Grady & Velikanje* and *Stanley P. Velikanje,* for appellant.

*Robert J. Willis* and *George W. Wilkins,* for respondent.

BEALS, J.—Charles Lowenthal, the defendant herein, has been for many years a resident of Yakima, in which city he was engaged in business as a merchant and pawnbroker. Lowenthal and one Lester Morrison were, during the month of July, 1933, by information, jointly charged with the crime of arson in the second degree. Morrison pleaded guilty; Lowenthal, not guilty. The latter's trial resulted in a verdict of guilty as charged, and from judgment and sentence on this verdict he has appealed.

Appellant assigns error upon the denial of his motion for a new trial, contending first, that the evidence is not sufficient to justify the verdict, and second, that, because of evidence discovered after the verdict, his motion should have been granted. Appellant also contends that the trial court erred in denying his motion to reopen the case and consider an additional affidavit; this motion having been filed by appellant after the trial court had, at the close of a full hearing, by a

16

formal order denied appellant's motion for a new trial. Appellant also contends that the trial court committed reversible error in receiving, over his objection, evidence offered by the state, and that reversible error was also committed in giving and refusing instructions.

Appellant owned a lot in Yakima, upon which was situated a small house. Appellant testified that he hired Morrison, with whom he had been acquainted for many years, to repair the dwelling, which was in rather poor condition after occupation by a tenant. In connection with these repairs, it was necessary to remove some paper from the walls, the torn paper being thrown on the kitchen floor.

It is not disputed that, shortly after five o'clock one evening and a few minutes after Morrison left the house, neighbors discovered that the house was on fire and summoned the fire department, which extinguished the blaze after some damage had been done. Upon being questioned as to the possible origin of the fire, Morrison at first stated that, shortly before he quit work, a man came to the house to ask if it was for rent; that, while in the house, the man was smoking, and there being paper and shavings on the floor, Morrison suggested that the man must have dropped his cigarette on this inflammable material, with the result that the fire started. Morrison also stated that some children had been playing in and about the house at the time he ceased work on the day of the fire, suggesting vaguely their presence and possible carelessness as a cause of the blaze. Both the city officials and the fire insurance company which had written a policy on the house investigated the situation, and in a few weeks the insurance company paid for the damage.

It appears that, several months later, Morrison,

after a quarrel with appellant, went before a deputy prosecuting attorney, to whom he made some further and different statements concerning the origin of the fire. Morrison later made two supplemental statements to the prosecuting attorney, which incriminated appellant, as the result of which the information above referred to was filed.

At appellant's trial, Morrison testified for the state, stating that he had been hired by appellant to set the house on fire, and that he had intentionally caused the blaze, pursuant to instructions which he had received from appellant and under promise of reward from him.

We shall first discuss the last two assignments of error above set forth.

During cross-examination of the state's witness Morrison, the witness was asked if, on or about a certain specified time, he had not had a conversation with one Griffin, and, upon the witness replying in the affirmative, he was further asked if he did not then tell Griffin that he (the witness) wanted Griffin to make an affidavit to the effect that appellant had employed him to destroy an automobile belonging to a third party, to which latter question Morrison answered "I did." The state interposed no objection to either of the questions above referred to, but on re-direct examination called the attention of the witness to the questions and his answers, and asked him to relate the balance of the conversation which took place at that time between the witness and Griffin. To this, appellant objected, on the ground that the questions asked on cross-examination were for the purpose of laying a foundation for impeachment; and the witness having admitted making to Griffin the request concerning which he was interrogated, no reason for further question on the matter existed, and that the remainder of

the conversation would relate to a collateral matter and was objectionable on the ground that it was hearsay. After considerable argument, the trial court overruled appellant's objection and permitted the witness to answer. Morrison then testified that, at the time and place mentioned, Griffin had told him that he had been hired by appellant to destroy the automobile referred to, and that the witness Morrison then asked Griffin to make that statement under oath in the form of an affidavit.

The general rule is, of course, as stated in volume 2 of Nichols Applied Evidence, p. 1365:

"Where evidence of a conversation is admissible at all, the entire conversation is admissible.

"When part of a conversation is given in evidence by one party, the whole on the same subject may be inquired into by the other."

The testimony in question falls within the rule. Appellant interrogated the witness on cross-examination concerning the witness' conversation with Griffin. The state, on re-direct examination, was properly permitted to ask Morrison to narrate the entire conversation. Appellant opened the matter of the conversation between the witness and Griffin, and cannot complain at the permission granted the state to pursue the matter to the end. The rule contended for by appellant would frequently result in placing before the jury half truths, which are often more misleading than falsehoods.

Appellant requested the trial court to give an instruction concerning the fact that Lester Morrison, who, as above stated, was jointly informed against with appellant, and who testified for the state, was, according to his story, an accomplice of appellant, and that "the testimony of an accomplice comes from a polluted source," and that, while a defendant may be

convicted on the uncorroborated testimony of an accomplice, jurors should act upon such testimony with great care and caution, etc. On this phase of the case, the trial court instructed the jury as follows:

"You are instructed that one who assists another in the commission of a crime is an accomplice. The law permits an accomplice to give testimony on behalf of the state and a defendant may be convicted on the uncorroborated testimony of an accomplice where the honest judgment is satisfied beyond a reasonable doubt. Still, a jury should act upon such testimony with great care and caution and subject it to careful examination in the light of other evidence in the case. The jury should not convict upon such testimony alone unless, after a careful examination of it, they are satisfied beyond all reasonable doubt of its truth."

While it is true that, in the case of *State v. Jones*, 53 Wash. 142, 101 Pac. 708, this court (without giving special consideration to the particular words) approved an instruction, in the course of which the jury were told that "the testimony of an accomplice comes from a polluted source" (discussing in its opinion the case of *State v. Pearson*, 37 Wash. 405, 79 Pac. 985), the court, in its opinion, said:

"The instruction complained of states the law, and when this appears, this court will not compare the instruction given by the court with a requested instruction on the same subject, for the form of the instruction has been repeatedly held by us to be immaterial. This is elementary, and needs no citation of authority."

The instruction given by the court in the case at bar stated the law, and it cannot be held that the failure of the trial court to include in its instruction the statement that the testimony of an accomplice comes from a polluted source constitutes reversible error.

Appellant also argues that the instruction which he proposed told the jury that, if it appeared

from the evidence that the witness had made to others statements inconsistent with his testimony, this fact should be carefully considered and weighed in determining the truth or falsity of his testimony. The court instructed the jury that they were the exclusive judges of the credibility of each witness who testified, and that, in determining the weight to be given to the testimony of any witness, they should consider his conduct and demeanor while testifying . . . his apparent candor or lack of candor, if any, the reasonableness or unreasonableness of any testimony given by him, and all other facts and circumstances surrounding such witness tending to corroborate or contradict his testimony.

We hold that the jury was properly instructed upon the questions which were the basis of appellant's proposed instruction, and that appellant's assignment of error, based upon the trial court's refusal to give the instruction which he proposed, is without merit.

Appellant contends that the trial court erred in denying his motion for a new trial; first, because this motion should have been granted on account of newly discovered evidence, and second, because the evidence introduced at the trial is insufficient to support the verdict. We shall first discuss the second phase of this assignment.

It is clear that Lester Morrison, appellant's codefendant and accomplice in the commission of the crime, is, as might be expected, a man whose veracity cannot at all times be relied upon. This is generally true where admitted accomplices testify before a jury. In such cases, the jury, in the first instance, and the trial court, in the second, are peculiarly well qualified to determine the degree of credence to be given to the testimony. An appellate court, studying merely a

written record, is much less able to comprehend the true situation as disclosed at the trial.

In the first place, appellant contends that he was convicted upon the uncorroborated testimony of Morrison. With this proposition, we cannot agree. Evidence was introduced which may have convinced the jury that the house owned by appellant, and which was damaged by fire, was insured in appellant's favor for a sum greatly in excess of its value. Appellant admitted that he had been convicted of violation of the liquor law, and that he had twice pleaded guilty before the Federal court to violations of the Federal law regulating possession and sale of narcotics. He also admitted that he had been convicted of violation of an ordinance of the city of Yakima covering the matter of dealing in second-hand merchandise. These matters the jury were entitled to consider as affecting appellant's credibility.

As to appellant's prior relations with Morrison, it appears that, several years before the trial, the two men had a dispute over an automobile, the dispute culminated in a physical encounter, and the men were estranged for a considerable period of time. Later, the quarrel was apparently made up, and Morrison from time to time worked for appellant. Later, Morrison wished to occupy a dwelling owned by appellant, but was refused permission to do so. This refusal resulted in renewed ill feeling on Morrison's part against appellant.

It further appears that, sometime prior to the fire, appellant had been a witness for the state in the prosecution of one Joe Colombo, and had thereby incurred the bitter enmity of Colombo and his wife. Morrison, it seems, had been on bad terms with the Colombos, but after his estrangement from appellant he became friendly with Mrs. Colombo, who accompanied him to

the sheriff's office on the occasion when Morrison made his first complaint against appellant. Appellant argues that Morrison entertained a bitter grudge against him, and that the story which Morrison told the officers of the law and testified to before the jury was a pure invention, motivated by spite.

Several months after the fire, Morrison quarreled with appellant and called on a deputy sheriff, with whom he went to a deputy prosecuting attorney, where he made a statement concerning the origin of the fire, different from anything he had said before, but not sufficient to constitute a basis for a criminal charge against appellant. Later, Morrison made another statement to the prosecuting attorney, in which he related other alleged facts, and subsequently Morrison made still a third statement; whereupon the information in this case was filed. In this third statement, Morrison said that he had been hired by appellant to set the fire, to which story he adhered on the witness stand. Appellant argues that the different statements made by Morrison conflict one with another.

Examination of the record convinces us that there is little real conflict between the stories told by Morrison on the different occasions mentioned, save in so far as the later statements include alleged facts to which he had not before referred. It cannot be said to be improbable that a man in Morrison's position, whether animated by spite, anger, or other motive, would tell what might be a perfectly true story bit by bit, endeavoring to minimize his own part in the crime while magnifying that of another. It is, of course, true in the case at bar that the jury might well have wholly disbelieved Morrison's testimony, but, on the contrary, they evidently believed him, and the burden rests heavily upon appellant to show that, as matter

of law, he is entitled to relief from the jury's verdict against him on matters of fact.

The story told by the witness Morrison was certainly unusual, and bearing in mind the prior relations between the two men and all the surrounding facts and circumstances, some of which we have narrated, it is easy to understand that the jury might have acquitted appellant. It cannot now be held, however, that the verdict is not supported by competent evidence, particularly in view of the fact that the trial court, having the great advantage of an intimate knowledge of all that had transpired, held against appellant upon the proposition that the evidence was insufficient to support a verdict of guilty.

Appellant alleges that, after the verdict, he learned that Morrison, prior to the trial, had made conflicting statements to the deputy prosecuting attorney who prepared the information; and also that, after the trial, Morrison had stated to several persons that his testimony was false, and that he had complained against appellant and given perjured testimony in an attempt to convict him of a crime in order to satisfy a grudge. In support of his motion for a new trial, appellant filed several affidavits containing statements to the above effect. Among the affidavits filed by appellant were three made by one Dean O'Brien, who at the trial testified for the defense. On behalf of the state, counter-affidavits were filed, the series as a whole presenting a maze of statements, charges, counterstatements, and counter-charges, which manifestly, on one side or the other, contain more perjury than has for some time fallen to our lot to peruse. Morrison by affidavit denied the statements attributed to him by O'Brien and others, and on behalf of the state, Joe and Rena Colombo denied statements attributed to

them to the effect that they had persuaded Morrison to frame appellant.

Appellant contends that the trial court should have granted his motion for a new trial, arguing that such a motion should be granted when it appears that, after a trial, an accomplice has made statements conflicting with those made under oath before the jury. Of course, in the case at bar, the sworn statements as to what Morrison had or had not said after the trial are in hopeless conflict.

Appellant relies upon the case of *State v. Powell,* 51 Wash. 372, 98 Pac. 741, in which this court reversed an order of the trial court denying a new trial sought by a defendant on the ground of newly discovered evidence. In the case cited, the conviction rested almost entirely upon the evidence of a fifteen year old girl. After the verdict of guilty, the prosecutrix made affidavit and testified in court, on the motion for a new trial, that her testimony before the jury was false. This court held that, the chief witness having herself admitted that she had at the trial given perjured testimony, it was an abuse of discretion to deny the defendant's motion for a new trial. The case would be in point if Morrison had, after the trial, admitted that he had perjured himself before the jury, but he made no such admission. On the contrary, he vigorously swore that he had told the jury the truth.

The trial court filed a memorandum opinion stating the reasons for denial of appellant's motion; this opinion indicating that most careful consideration had been given to the showing made by appellant and the argument based thereon. The trial court indicated that, in its opinion, certain statements made by the affiant O'Brien were unworthy of belief, and certainly the record amply justifies this conclusion. On the trial, Morrison admitted that he had made statements con-

cerning the fire and appellant's connection therewith which conflicted with his testimony, and much evidence was before the jury as to Morrison's ill will toward appellant.

The situation here presented is nowise analogous to one in which it clearly appears, either by the admission of such witness or overwhelming proof, that the chief witness for the prosecution had, after the trial, repudiated his testimony. We find nothing in the record which justifies reversal of the action of the trial court in denying appellant's motion for a new trial.

After the denial of appellant's motion for a new trial, he moved to reopen the case for the purpose of permitting him to file the affidavit of one George Zarlingo and have the same considered with the other affidavits in support of appellant's motion for new trial. The trial court refused to reopen the case or permit the affidavit to be filed, and this ruling appellant also assigns as error. By his affidavit, Zarlingo deposed that, during the spring of 1933, he knew Lester Morrison, and that Morrison then told him that he had a grudge against appellant, and also that he (Morrison) "had been assured that if he informed against Mr. Lowenthal by burning the house he would not have to spend time in jail." Appellant contends that this affidavit indicates that Morrison had been promised immunity from punishment for his share in the crime, and that the trial court should have reopened the hearing on the motion for new trial and granted the same.

In his affidavit, Zarlingo does not depose who Morrison said had promised him immunity, and there was much testimony before the jury to the effect that Morrison disliked appellant, and the affidavit, therefore, was entitled to little weight, even if seasonably filed. The trial court did not err in refusing to re-

26

open the case and reconsider the matter in the light of Zarlingo's affidavit.

■ Appellant has filed in this court the affidavit of J. L. Mitchell, formerly deputy prosecuting attorney for Yakima county, and the man who, as such deputy, filed the information upon which appellant was tried. The affidavit filed purports to state facts which might have some bearing upon the question of appellant's guilt or innocence, if seasonably submitted to the jury or the trial court, but as this court in such cases as this sits merely as an appellate tribunal, the affidavit has no place in the record before us. Respondent has moved to strike the affidavit, and this motion is granted.

In proper cases, this court will entertain a petition for leave to apply to the superior court for a new trial, and this method of relief we deem adequate to cover such situations as that here presented in connection with the Mitchell affidavit.

Examination of the record convinces us that the same is free from error, and the judgment appealed from is accordingly affirmed.

MAIN, TOLMAN, GERAGHTY, and BLAKE, JJ., concur.