Filed 5/30/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| AMERICAN WAY CELLULAR, INC., | B234188 |
| Plaintiff, Cross-defendant and Appellant, | (Los Angeles County Super. Ct. No. LC084386) |
| v. | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | |
| Defendant, Cross-complainant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael A. Latin, Judge.  Affirmed.

Allan Law and James G. Allen for Plaintiff, Cross-defendant and Appellant.

Weston & McElvain, Wynn C. Kaneshiro and Edmond Sung for Defendant, Cross-complainant and Respondent.

_____

American Way Cellular, Inc. (American Way), appeals from a judgment entered after the trial court granted summary judgment in favor of Travelers Property Casualty Company of America (Travelers). American Way filed suit against Travelers, alleging that American Way was entitled to policy benefits following a fire loss at its place of business located in Van Nuys, California (the premises). The court determined that Travelers had no obligation to pay benefits to American Way, holding that an "[e]ndorsement" contained in the policy issued by Travelers "requires as a condition of insurance that the insured premises contain automatic sprinklers" and it was undisputed that the premises did not have an automatic sprinkler system. The court found in favor of Travelers on its cross-complaint for declaratory relief and reimbursement of a $250,000 good faith advance payment against American Way.

American Way contends that the judgment must be reversed because triable issues of material fact exist with respect to its causes of action for negligence and declaratory relief, including whether A & J Financial Insurance Services (A & J), the insurance broker that prepared the insurance application for American Way indicating the premises were equipped with sprinklers, was an actual or ostensible agent of Travelers. American Way also argues that it was entitled to coverage because the "provisions requiring [American Way to] 'maintain the protective devices or services listed' cannot require [American Way] to maintain something that does not exist." We conclude that because the evidence showed as a matter of law that A & J was not an actual or ostensible agent of Travelers and the evidence showed that American Way did not maintain a sprinkler system as required under the policy, American Way failed to meet its burden of showing that triable issues of material fact exist with respect to its claims for declaratory relief and negligence. We affirm the judgment.

## BACKGROUND

### A. The broker agreement between A & J and USASIA Insurance Services, Inc.

A & J is a licensed insurance broker for property insurance. USASIA Insurance Services, Inc. (USASIA), is an insurance agent of Travelers. USASIA and A & J entered into a broker agreement on May 21, 2002 (broker agreement). The broker agreement

2

referred to A & J as "'BROKER'" and stated that "BROKER desires USASIA to place risks of BROKER'S clients (hereafter referred to a [*sic*] the 'INSURED') with and for acceptance by admitted companies and or non-admitted companies, . . . and [¶] . . . USASIA agree [*sic*] to allow BROKER commission on such business, if and when placed . . . ."

## B.  The insurance application

Ali Sheibani is the owner of American Way.  Sheibani contacted Ali Derakhshanfar, who was an insurance broker and "principal" of A & J, regarding liability and property coverage.  Derakhshanfar "placed" American Way "with CNA initially," and later, Travelers.  With respect to the placement with Travelers, a "Commercial Questionnaire" filled out by A & J contained a blank space next to the words, "Sprinklers/Smoke Detector"; the commercial questionnaire was faxed to Sheibani.  On September 25, 2007, A & J submitted a commercial insurance application (application) on behalf of American Way to USASIA with the notation, "Please see the attached [ACORD] app for above insured.  This is a new venture.  No losses in the history.  Please give us a quote as soon as possible.  If you have any questions feel free to contact us."  In the box entitled, "FIRE PROTECTION (Sprinklers, Standpipes, CQ/Halon Systems)," the application indicated that American Way had "SMOKE DETECTORS/FIRE EXTING./SPRINKLERS."

On September 27, 2007, USASIA provided a quote from Travelers to A & J, which stated, "Please refer carrier quote proposal for detail information.  It may reflect reduced and/or restricted coverage and/or limits which are different from your original request."  On October 11, 2007, A & J requested USASIA to "bind the attached quote effective today 10/11/07 immediately & give us a binder/invoice at your earliest convenience."  On the same day, USASIA sent an e-mail correspondence stating, among other things, "BINDER CONFIRMATION [¶] Policy Period: 10/11/2007 – 10/11/2008 [¶] Assigned Policy Number:  680-6857L078 [¶] . . . [¶] Insurance Company: Travelers Insurance Company [¶] . . . [¶] The policy will be issued and forwarded to your attention within next 2–3 weeks."

## C. The policies

Travelers issued a commercial property policy to American Way effective October 10, 2007, to October 10, 2008 (2007 policy). The 2007 policy stated that Travelers had the right to make inspections at any time, but was not obligated to make any inspections. The 2007 policy contained a "Protective Safeguards Endorsement For Sprinklered Locations and Restaurants" (Endorsement), which stated, "As a condition of this insurance, you are required to maintain the protective devices or services listed . . . ." The protective devices were listed as "Automatic Sprinkler System, including related supervisory services." An exclusion section stated, "We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you: [¶] a. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or [¶] b. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order. [¶] If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours." The 2007 policy provided that Travelers "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss." The 2007 policy also stated, "Business Income and Extra Expense is provided at the premises described in the Declarations when the Declarations show that you have coverage for Business Income and Extra Expense" and "Control of Property [¶] Any act or neglect of any person other than you beyond your direction or control will not affect this insurance." A cancellation provision stated that the policy could be canceled by Travelers upon 30 days' notice.

American Way received a copy of the 2007 policy. Upon expiration of the 2007 policy, Travelers issued a renewal policy with effective dates of October 10, 2008, to May 10, 2009 (2008 policy). The provisions in the 2008 policy were identical to those contained in the 2007 policy and contained an identical Endorsement. On September 3, 2008, USASIA forwarded a copy of the 2008 policy to A & J, requesting that A & J

4

review it and advise USASIA of any errors, omissions, or changes. USASIA did not receive a response from A & J regarding any errors, omissions, or changes.

### D. The fire and subsequent investigation

On October 11, 2008, a fire occurred at the premises, which occupied the southwest section of a "warehouse-type building." Travelers retained Pacific Rim Investigative Services Group, Inc. (Pacific Rim), to investigate the loss and the cause of the fire. In the meantime, Travelers issued a "good faith" advance payment to American Way in the amount of $250,000. Pacific Rim concluded that the fire originated in the interior of the east side of the building where an area was under construction. Pacific Rim noted that there was no automatic sprinkler system installed in the premises. Fire protection in the building consisted of an alarm system, which functioned at the time of the incident, and several fire extinguishers.

### E. Travelers's denial

On November 11, 2008, Travelers sent a letter to American Way stating that the claim "may not be covered by the policy" and that it was investigating the claim subject to a full reservation of all rights and defenses. On February 20, 2009, Travelers issued a denial letter stating that "there was no fire suppression sprinkler system installed in the building at the time of the loss. We note that your application for insurance represents that the building is equipped with a sprinkler system." The letter also stated that Travelers intended to "collect" the $250,000 good faith advance payment "for the lack of coverage on this claim."

### F. The complaints and cross-complaints

American Way filed a complaint seeking declaratory relief against Travelers, USASIA, and A & J. Later, American Way filed a first amended complaint (FAC), alleging causes of action for declaratory relief and bad faith breach of contract against Travelers; and negligence and fraud against Travelers, USASIA, and A & J. Travelers demurred to the FAC. The court overruled Travelers's demurrer to the cause of action for declaratory relief; sustained the demurrer to the causes of action for bad faith and negligence with leave to amend; and sustained the demurrer to the cause of action for

5

fraud without leave to amend. The court sustained A & J's demurrer to the cause of action for negligence with leave to amend; and sustained the demurrer to the cause of action for fraud without leave to amend. The court sustained USASIA's demurrer to the FAC without leave to amend. American Way did not appeal from the judgment entered in favor of USASIA.

American Way filed a second amended complaint (SAC), alleging causes of action against Travelers for declaratory relief, bad faith breach of contract, and negligence; and a cause of action for negligence against A & J. The SAC alleged that an actual controversy existed as to whether the fire loss was a covered loss and requested a judicial determination of the rights and duties of the parties with regard to the 2008 policy and a declaration as to whether the 2008 policy was in effect at the time of the loss; a declaration as to whether the loss was covered under the 2008 policy; and a declaration as to whether Travelers was liable for the loss. It also alleged that Travelers acted in bad faith in denying coverage on the basis that the premises did not have a sprinkler system. The SAC alleged that Travelers had a duty to conduct inspections of the premises, write the policy, insure the premises, and procure the policy requested by American Way. It alleged that at the time the 2007 and 2008 policies were written, Travelers knew of American Way's coverage requirements; made affirmative representations to American Way that it was adequately covered according to its needs; and knew that the premises did not contain a fire sprinkler system, but negligently wrote an insurance policy "based upon [its] own independent inspections, which TRAVELERS now alleges provided no coverage to [American Way]."

Travelers demurred to the SAC's bad faith and negligence causes of action. The trial court sustained Travelers's demurrer to the SAC's bad faith cause of action without leave to amend but overruled it as to the cause of action for negligence.

Travelers filed a cross-complaint against American Way, alleging causes of action for declaratory relief and reimbursement. A & J filed a cross-complaint against USASIA and Travelers, alleging causes of action for indemnity, contribution, and declaratory relief. Travelers filed a cross-complaint against A & J, alleging causes of action for

6

indemnity and contribution. A & J subsequently dismissed its cross-complaint against USASIA without prejudice.

## G. Travelers's motion for summary judgment

On January 31, 2011, Travelers filed a motion for summary judgment against American Way on Travelers's cross-complaint and American Way's SAC; and against A & J on its cross-complaint against Travelers. In support of its motion for summary judgment, Travelers submitted the following evidence. Allyson Delgado, a general adjuster employed by Travelers, declared that after Travelers was notified of the fire, it issued a "good faith" advance payment to American Way in the amount of $250,000. Subsequently, Travelers was informed by Pacific Rim that there was no automatic sprinkler system installed in the premises. The 2008 policy contained the Endorsement that required American Way to have an operating fire sprinkler system on the premises. On November 11, 2008, Travelers sent American Way a reservation of rights letter.

In A & J's response to request for admissions, it admitted under oath that it was "not acting as an agent of TRAVELERS for the purpose of procuring insurance for [American Way]" and it "acted as an insurance broker for [American Way] for the purposes of procuring insurance at" the premises. In response to interrogatories, A & J stated that Hilda Castellanos, a principal of American Way, informed an employee of A & J that the premises were "equipped with a sprinkler system . . . [and based upon] the information obtained from [American Way], [A & J] prepared the application package and submitted it to USASIA." And in Derakhshanfar's deposition, he testified that A & J "only represent[ed] the insured"; that A & J had never represented or been an agent of Travelers; that A & J had never represented to anyone that it was an agent of Travelers; and that in obtaining commercial property insurance, A & J went "through [a] general agent." He also testified that the broker agreement between A & J and USASIA was terminated by USASIA because of American Way's lawsuit against USASIA. An e-mail from USASIA to Travelers stated that USASIA terminated its relationship with A & J because A & J incorrectly stated on American Way's application that the premises were equipped with automatic sprinklers. A notice filed by A & J with the Department of

7

Insurance listed various life and health insurance companies that had appointed A & J their agent but did not list Travelers.

Also, in Sheibani's deposition he stated that Derakhshanfar was "a broker. He just sell[s] insurance, different insurance." Sheibani stated that no one from Travelers "ever [came] out"; Travelers never called him; "[t]here was no correspondence from Travelers during the application process"; and other than bills and the denial letter, he did not receive any correspondence from Travelers. He also stated that he had received a copy of the 2007 policy and the "renewal policy" in the mail.

In support of its opposition to Travelers's motion for summary judgment, American Way attached the declaration of Sheibani. Travelers objected to statements contained in Sheibani's declaration on the basis that the statements were inadmissible hearsay, failed to establish Sheibani's personal knowledge, were based upon speculation or improper opinion testimony, or were irrelevant. The trial court sustained most of the objections, admitting the remainder as follows.

Sheibani's declaration at paragraph 6, as admitted, stated, "I never indicated, nor was I ever asked whether the premises which I occupied and which were insured by Travelers were sprinklered. Had I been asked I would have confirmed that they were not sprinklered. Even a cursory inspection of the premises would make anyone writing insurance on my premises aware that there were no sprinklers on the premises or in the building which my premises were located." Paragraph 9, as admitted, stated, "Following the loss of my business premises Travelers . . . paid the sum of two hundred and fifty thousand dollars ($250,000.00) as an interim payment pending their final determination as to the amount of the loss. . . . On December 17, 2008 (2 months after the loss) Travelers sent me a bill for $650.00 which Travelers claimed was an additional (earned) premium due Travelers for the audit of the 10/10/07–10/10/08 policy periods, which sum I paid." Paragraph 10 stated, "On February 3, 2009, Travelers sent me revised declarations premiums for the policy period 10/10/08–10/10/09 charging an additional premium of $854.00 and amending my insurance by adding endorsements." Paragraph 11 stated, "On February 23, 2009 Travelers forwarded the correspondence attached as

8

Exhibit 4 hereto confirming that my policy was still in force and requiring that I pay the $2,205.25 then due on the policy." Paragraph 12 stated, "In fact, the policy remained in effect until 05/10/2009, when it was cancelled due to 'non-payment of premium.'" Paragraph 16 stated, "I was never aware of any agreement between USASIA and A & J. A & J held themselves out as the representative of an agent for Travelers Insurance and assured me that Travelers was paying them for procuring the insurance contract on my premises. Once my coverage was placed with Travelers Insurance by A & J all of my communications relative to that insurance and relative to the renewal of that insurance and claims under that Policy were conducted between me and Travelers Insurance employees. Neither I nor anyone from American Way . . . has advised A & J, USASIA, or Travelers that the business premises which were insured by Travelers were sprinklered."

## H. The trial court's order granting Travelers's motion for summary judgment

On April 20, 2011, the trial court granted Travelers's motion for summary judgment against American Way and A & J "in its entirety." The court determined that Travelers met its burden of negating essential elements of American Way's causes of action for declaratory relief and negligence by establishing that the 2008 policy required a functioning sprinkler system as a condition of coverage and that the evidence showed that no sprinkler system existed at the premises. In addition, the court held that Travelers demonstrated that it owed "no legal duty to [American Way] to investigate and verify information provided to it by [A & J]." And the court found that Travelers produced evidence that it was not liable for A & J's negligence "because A & J functioned as an insurance broker, not agent, of [Travelers]." The court determined that American Way failed to meet its burden of showing that triable issues of material fact existed with respect to its claims for declaratory relief and negligence. The court stated, "[American Way] has failed to show triable issues of material fact exist as to whether A & J, though not an agent, acted as an ostensible agent for [Travelers] thus creating liability." The court also held that Travelers was entitled to judgment against A & J, which failed to file opposition to Travelers's motion for summary judgment.

9

The trial court entered judgment in favor of Travelers and against American Way in the amount of $305,205, which included $250,000 in damages and prejudgment interest. The trial court also entered judgment in favor of Travelers and against A & J, ordering that A & J take nothing by way of its cross-complaint against Travelers. The court ordered Travelers to recover costs of suit from American Way and A & J. American Way appeals. A & J and USASIA are not parties to this appeal.

## DISCUSSION

### A. Standard of review

"'The standard for deciding a summary judgment motion is well-established, as is the standard of review on appeal.' [Citation.] 'A defendant moving for summary judgment has the burden of producing evidence showing that one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to that cause of action. [Citations.] The burden then shifts to the plaintiff to produce specific facts showing a triable issue as to the cause of action or the defense. [Citations.] Despite the shifting burdens of production, the defendant, as the moving party, always bears the ultimate burden of persuasion as to whether summary judgment is warranted. [Citation.]' [Citation.] [¶] 'On appeal, we review de novo an order granting summary judgment. [Citation.] The trial court must grant a summary judgment motion when the evidence shows that there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citations.] In making this determination, courts view the evidence, including all reasonable inferences supported by that evidence, in the light most favorable to the nonmoving party. [Citations.]' [Citation.]" (*Hypertouch, Inc. v. ValueClick, Inc*. (2011) 192 Cal.App.4th 805, 817–818, fn. omitted.)

### B. American Way failed to meet its burden of showing that triable issues of material fact exist with respect to its claim for negligence

American Way contends that triable issues of material fact exist with respect to its claim for negligence, including whether A & J was an actual or ostensible agent of Travelers. We conclude that because the evidence showed as a matter of law that A & J was not an actual or ostensible agent of Travelers, the trial court properly determined that

10

American Way failed to meet its burden of showing that triable issues of material fact exist with respect to its claim for negligence.

American Way alleged that Travelers had a duty to conduct inspections of the premises, write the policy, insure the premises, and procure the policy requested by American Way. It alleged that Travelers knew of American Way's coverage requirements; made affirmative representations to American Way that it was adequately covered; and knew that the premises did not contain a fire sprinkler system, but negligently wrote an insurance policy "based upon [its] own independent inspections, which [Travelers] now alleges provided no coverage to [American Way.]"

But an insurer does not have the duty to investigate the insured's statements made in an insurance application and to verify the accuracy of the representations. (*Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 476.) Rather, it is the insured's duty to divulge fully all he or she knows. (*Ibid*.) And "[i]nsurance companies and brokers have no affirmative duty to advise their insureds to procure particular or different kinds of coverage than they obtained." (*Ray v. Valley Forge Ins. Co.* (1999) 77 Cal.App.4th 1039, 1049.) Further, the 2008 policy stated that Travelers had the right to make inspections but was not obligated to do so. And the evidence showed that A & J filled out the application based on information it received from American Way, then submitted it to USASIA. In turn, Travelers relied on the representations in the application when it issued the policies. Although American Way argues on appeal that Travelers negligently issued the policies knowing that the premises were not equipped with sprinklers, American Way did not present admissible evidence that Travelers made an independent investigation or otherwise knew that the premises were not equipped with sprinklers. Rather, Sheibani declared that he had "never indicated" or been asked if the premises were equipped with sprinklers and that a cursory inspection of the premises would have revealed the lack of sprinklers. And he testified in deposition that other than bills and the denial letter, he did not receive any correspondence from Travelers and that no one from Traveler's called him or ever "[came] out."

11

Thus, in order to succeed on a theory of negligence against Travelers, American Way must show that A & J, which wrote the application indicating that the premises were equipped with automatic sprinklers, acted negligently as the agent of Travelers. "An insurer, as a principal, may be vicariously liable for the torts of its agent if the insurer directed or authorized the agent to perform the tortious acts, or if it ratifies acts it did not originally authorize. [Citation.] Layered atop the principal/agent relationship of the insurer to its agent is the insurer's fiduciary duty to conduct itself with the utmost good faith for the benefit of its insured. [Citation.]" (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1118–1119.) "Statutorily, an agent is defined as one who is 'authorized, by and on behalf of an insurer, to transact all classes of insurance' except for life insurance ([Ins. Code,] §§ 31, 1621) while a broker is 'a person who, for compensation and on behalf of another person, transacts insurance other than life with, but not on behalf of, an insurer.' ([Ins. Code,] §§ 33, 1623.)" (*Krumme v. Mercury Ins. Co.* (2004) 123 Cal.App.4th 924, 928–929.) "'An "insurance broker" is one who acts as a middleman between the insured and the insurer, soliciting insurance from the public under no employment from any special company, and, upon securing an order, placing it with a company selected by the insured or with a company selected by himself or herself; whereas an "insurance agent" is one who represents an insurer under an employment by it. A broker is, in essence, employed in each instance as a special agent for a single purpose, while the very definition of agent indicates an ongoing and continuous relationship. . . . [B]rokers and insureds are ordinarily involved in what can be viewed as a series of discrete transactions, while agents and insureds tend to be under some duty to each other during the entire length of the relationship.' [Citations.]" (*Id.* at p. 929.)

"'An individual cannot act as an insurance agent in California without a valid license issued by the commissioner of insurance. (Ins. Code, § 1631.) In addition to possessing a license, an insurance agent must be authorized by an insurance carrier to transact insurance business on the carrier's behalf. This authorization must be evidenced by a notice of agency appointment on file with the Department of Insurance. (Ins. Code, § 1704, subd. (a).)' [Citation.] Unlike an agent, a broker does not act for the insurer, and

12

the insurer is not liable for the broker's acts or omissions." (*Krumme v. Mercury Ins. Co.*, *supra*, 123 Cal.App.4th at p. 929; *Rios v. Scottsdale Ins. Co.* (2004) 119 Cal.App.4th 1020, 1026 [insurance broker "has no binding authority and is as a matter of law not a general agent for the insurer"].)

American Way's attempt to raise a triable issue of fact on the basis of agency fails. Travelers produced evidence that A & J was an insurance broker and not an agent of Travelers. In its response to a request for admissions, A & J admitted under oath that it was not acting as Travelers's agent when it procured insurance for American Way and that it acted as an insurance broker for American Way in procuring insurance for the premises. Further, the broker agreement between A & J and USASIA stated that A & J was a representative of American Way and was not acting as the agent or representative of USASIA or its insurance companies. And Derakhshanfar testified in deposition that A & J "only represent[ed] the insured"; that A & J had never represented or been an agent of Travelers; that A & J had never represented to anyone that it was an agent of Travelers; and that in obtaining commercial property insurance, A & J went "through [a] general agent." Further, Sheibani described Derakhshanfar as a "broker." And Travelers was not listed as an appointed agent of A & J in the notice filed with the Department of Insurance.

American Way also failed to show a triable issue of fact as to whether A & J was an ostensible agent of Travelers. "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317.) "Before recovery can be had against the principal for the acts of an ostensible agent, three requirements must be met: The person dealing with an agent must do so with a reasonable belief in the agent's authority, such belief must be generated by some act or neglect by the principal sought to be charged and the person relying on the agent's apparent authority must not be negligent in holding that belief. [Citations.] Ostensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to

13

cause the belief the agency exists." (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 403–404.)

In support of its argument that a triable issue of material fact exists as to whether A & J was an ostensible agent of Travelers, American Way cites to portions of Sheibani's declaration that the trial court had ruled were inadmissible. But American Way does not contend that the court's evidentiary rulings were erroneous, other than arguing that the court "improperly ignored . . . Sheibani's declaration by sustaining objections based upon lack of personal knowledge and relevance," and we conclude it has forfeited such an argument. (See *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546 [court need not furnish argument or search record for support for appellant's unsupported contention but may treat as forfeited].) Therefore, we consider only the admissible portions of Sheibani's declaration. Sheibani declared that he was not aware of the broker agreement between USASIA and A & J and that A & J held itself out "as the representative of an agent for Travelers Insurance and assured me that Travelers was paying them for procuring the insurance contract on my premises." But as stated, the principal, and not the agent, must make statements or commit acts causing the person relying on the apparent agency to believe the agency exists. (*J.L. v. Children's Institute, Inc.*, *supra*, 177 Cal.App.4th at pp. 403–404.) American Way has made no showing that *Travelers* made any statements or committed acts causing American Way to believe an agency relationship existed between A & J and USASIA or A & J and Travelers. Rather, Sheibani testified in deposition that other than bills and the denial letter, he did not receive any correspondence from Travelers and that no one from Travelers called him or ever "[came] out." We conclude that American Way failed to raise a triable issue of material fact as to whether A & J was the ostensible agent of Travelers.

Accordingly, American Way failed to meet its burden of showing that triable issues of material fact exist with respect to its claim for negligence.

14

**C. American Way failed to meet its burden of showing that triable issues of material fact exist with respect to its claim for declaratory relief**

American Way contends that triable issues of material fact exist with respect to its claim for declaratory relief and that it was entitled to coverage because the "provisions requiring [American Way to] 'maintain the protective devices or services listed' cannot require [American Way] to maintain something that does not exist." We disagree and conclude that American Way failed to meet its burden of showing that triable issues of material fact exist with respect to its claim for declaratory relief.

Code of Civil Procedure section 1060 provides that any person may bring an action for a declaration of his or her rights and duties, including a determination of any question of construction or validity arising under a contract in cases of actual controversy relating to the legal rights and duties of the respective parties. "'The fundamental basis of declaratory relief is the existence of an *actual, present controversy* over a proper subject.'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79.)

As we explain, we conclude that the Endorsement was a condition precedent to coverage. "'A condition *precedent* refers to an act, condition or event that must occur before the insurance contract becomes effective or binding on the parties . . . .' [Citation.] In general, 'conditions neither confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured in order to obtain the coverage provided by the policy.' [Citation.]" (*North American Capacity Ins. Co. v. Claremont Liability Ins. Co.* (2009) 177 Cal.App.4th 272, 289–290.) Thus, in *North American* the Court of Appeal determined that a "contractors warranty endorsement" which required the insured to secure a written hold harmless agreement and a certificate of insurance from subcontractors established a precondition of coverage as to work done by the subcontractors. (*North American*, at pp. 290–291.) Likewise, in the instant matter the Endorsement's requirement of automatic sprinklers was a condition of coverage.

Because we have found no California cases interpreting protective safeguards endorsements similar to the one at issue, we find guidance in cases from other jurisdictions that hold the insured's failure to comply with similar endorsements

15

precluded coverage. (See *United Capitol Ins. Co. v. Kapiloff* (4th Cir. 1998) 155 F.3d 488, 496 [insured's failure to maintain automatic sprinklers, fire alarm, and burglar alarm as required under protective safeguards endorsement precluded coverage]; *Goldstein v. Fidelity & Guar. Ins. Underwriters* (7th Cir. 1996) 86 F.3d 749, 753–754 [insurer not estopped from enforcing protective safeguards endorsement that required insured to maintain sprinklers as a condition of coverage]; *Mangiacotti v. U.S. Liability Ins. Co.* (Mass.App., Aug. 31, 2004, No. 03-P-454) 2004 WL 1933611 [insured's failure to maintain functional smoke detectors as represented in application and required under protective safeguards endorsement precluded coverage]; *Tuscany Bistro, Inc. v. Sirius America Ins. Co.* (N.J. Super.Ct.App.Div., Aug. 12, 2011, No. L-994-05) 2011 WL 3517000 [insured's failure to maintain fire alarm connected to a central station as represented in application and required under protective safeguards endorsement precluded coverage]; *Indian Harbor Ins. Co. v. Randolph Partners, LLC–740 Series* (N.D. Ill., Aug. 10, 2010, No. 08 C 629) 2010 WL 3155974 [insured's failure to maintain central station burglar and fire alarm as required under protective safeguards endorsement precluded coverage].)

Applying these authorities, we conclude that American Way was precluded from coverage because it failed to maintain an automatic sprinkler system under the terms of the Endorsement. The Endorsement stated, "As a condition of this insurance, you are required to maintain the protective devices or services listed . . . ." The protective devices were listed as "Automatic Sprinkler System, including related supervisory services." It was undisputed that the premises were not equipped with automatic sprinklers. Yet American Way's application indicated that it had "SMOKE DETECTORS/FIRE EXTING./SPRINKLERS." As noted, Travelers did not have a duty to investigate the insured's responses but properly could rely on the representations made in the application in issuing coverage.

American Way's reliance on *Holz Rubber Co., Inc. v. American Star Ins. Co.* (1975) 14 Cal.3d 45 (*Holz*) does not advance its cause. In that case the endorsement at issue stated, "'This policy being written at a reduced rate based on the protection of the

premises by an automatic sprinkler system, it is a condition of this policy that, so far as the sprinkler system and the water supply therefor are under the control of the insured, due diligence shall be used by the insured to maintain them in complete working order, and that no change shall be made in the said system or in the water supply therefor without the consent in writing of this company and/or the Pacific Fire Rating Bureau.'" (*Holz*, at p. 51, fn. 4.)

In *Holz*, some of the buildings owned by the insured were equipped with automatic sprinkler systems. During the period of coverage, a fire loss occurred at a new building under construction, with a sprinkler system laying outside the building ready to be installed. Our Supreme Court determined that the term "'maintain' . . . describes only the insured's duty with respect to the sprinkler system in existence when the policy was first issued," and the terms of the endorsement did not anticipate the possibility of new construction or stock being stored in the new building prior to installation of the sprinklers. (*Holz*, *supra*, 14 Cal.3d at p. 56.) The court noted that the express terms of the policy granted "'blanket'" coverage and coverage of stock stored in buildings during construction. (*Holz*, at pp. 57–58.) In holding the insurer liable, the court construed ambiguities against the insurer and viewed the policy in its entirety, determining that the sprinkler endorsement was reasonably susceptible to the interpretation that the insured was permitted to use newly constructed buildings for the storage of stock prior to installation of sprinklers, its only duty being to use due diligence in installing a sprinkler system. (*Holz*, at p. 60.)

The situation here is not like the one in *Holz*. There was no evidence that American Way intended to install automated sprinklers in new construction as did the insured in *Holz*. Rather, Sheibani adamantly declared that he had never told anyone that the premises were installed with sprinklers and that anyone looking at the premises could see that they were not equipped with sprinklers. Yet American Way's application indicated that the premises were equipped with automatic sprinklers. Unlike *Holz*, there was no ambiguity within the terms of the Endorsement that must be construed against Travelers.

Nevertheless, American Way urges that an interpretation of the policy in its entirety compels the conclusion that the premises were covered for fire loss. American Way contends that the use of the term "maintain . . . does not require that American Way install a new fire sprinkler system where none previously existed." We disagree and conclude that the Endorsement required American Way to have a functioning, operational sprinkler system during the period of coverage. We are not persuaded that the policies were intended to cover insureds who had not equipped their properties with automatic sprinklers in the same fashion as those whose properties were equipped with automatic sprinklers. (See *Brookwood, LLC v. Scottsdale Ins. Co.* (E.D. La., Aug. 17, 2009, No. 08-4793) 2009 WL 2525756 ["'maintain' [means] that the insured is required to have a functioning, operational burglar alarm system"].) And as noted, American Way's application stated that automatic sprinklers existed on the premises and the policies were issued with that understanding.

In support of its argument that it is entitled to coverage based on a reading of the policy in its entirety, American Way cites to provisions in the policy that stated Travelers "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss"; "Business Income and Extra Expense is provided at the premises described in the Declarations"; and "Control of Property [¶] Any act or neglect of any person other than you beyond your direction or control will not affect this insurance." American Way also cites to a cancellation provision that states that the policy can be canceled by Travelers upon 30 days' notice. American Way contends that the policy does not refer to automatic sprinklers in its limitations or exclusions provisions, contending that the policy taken as a whole must be interpreted to include coverage of unsprinklered premises. We disagree and conclude that the Endorsement was a condition of coverage that American Way did not satisfy. And consistent with our conclusion, the 2008 policy contains an exclusion stating that Travelers would not pay for fire loss if, prior to a fire, American Way knew of a suspension or impairment of the sprinkler system or failed to maintain the sprinkler system in working order. Finally, "'[i]f there is a conflict in meaning between an

18

endorsement and the body of the policy, the endorsement controls.' [Citation.]" (*Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 50, fn. 4.)

American Way also contends that other issues of material fact exist that defeat the motion for summary judgment. American Way claims that a dispute exists as to whether Travelers provided notice that the premises needed to be equipped with automatic sprinklers and that a lack of sprinklers would give Travelers the right to cancel the policies. But the Endorsement gave clear notice of the requirement of an automatic sprinkler system and American Way did not produce admissible evidence that it did not receive the Endorsement. Rather, Sheibani testified in deposition that he had received a copy of the policies in the mail.

American Way further argues that it is disputed whether A & J, USASIA, or Travelers was responsible for the representation in the application that the premises were equipped with automatic sprinklers. We disagree. Although Sheibani declared neither he nor anyone else at American Way advised A & J, USASIA, or Travelers whether the premises were sprinklered, the evidence showed that the application form was filled out by A & J, which had been advised by Hilda Castellanos, a principal of American Way, that the premises were equipped with a sprinkler system; A & J prepared the application package and submitted it to USASIA based on the information obtained from American Way; and USASIA severed its relationship with A & J based on A & J's misrepresentation to Travelers that the premises were equipped with automatic sprinklers. That Sheibani did not know that a principal at American Way had provided incorrect information to A & J does not raise a triable issue of material fact. In any event, regardless of how the incorrect information was transmitted to Travelers, as relevant to a coverage determination, the policy containing the Endorsement required American Way to maintain an automatic sprinkler system, which it did not.

Accordingly, we conclude that American Way failed to raise triable issues of material fact as to the causes of action for negligence and declaratory relief and that the trial court did not err in granting Travelers's motion for summary judgment.

19

## DISPOSITION

The judgment is affirmed.  Travelers Property Casualty Company of America is entitled to costs on appeal.

CERTIFIED FOR PUBLICATION.


                                                    MALLANO, P. J.

We concur:


ROTHSCHILD, J.


CHANEY, J.