**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 6 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SALAM RAZUKI, | No. 24-2352 |
| Plaintiff - Appellant, | D.C. No. 3:21-cv-01983-AJB-DEB |
| v. | |
| AMGUARD INSURANCE COMPANY, | MEMORANDUM* |
| Defendant - Appellee, | |
| and | |
| BERKSHIRE HATHAWAY GUARD INSURANCE COMPANIES, DOES 1-10, inclusive, | |
| Defendants. | |

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Submitted June 3, 2025**
Pasadena, California

Before: HURWITZ, MILLER, and SUNG, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

In this diversity action, Salam Razuki asserts that AmGUARD Insurance Company ("AmGUARD") breached his insurance policy (the "Policy") by refusing to cover losses from a fire that damaged a multi-tenant commercial building. The district court granted AmGUARD summary judgment on Razuki's claims for breach of contract and the implied covenant of good faith and fair dealing and dismissed under Federal Rule of Civil Procedure 12(b)(6) Razuki's claim that AmGUARD violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

We have jurisdiction under 28 U.S.C. § 1291 and review the summary judgment and Rule 12(b)(6) dismissal de novo. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021). We also review de novo "the district court's interpretation of state contract law and its interpretation of an insurance policy." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (cleaned up). We affirm.

1.      The critical part of the Policy is the "Protective Safeguards – Fire" Endorsement ("PSE"), which conditions coverage for loss resulting from fire on maintenance of specified protective safeguards. The PSE lists potentially applicable safeguards, each identified by a symbol, providing in relevant part:

"P-1" **Automatic Sprinkler System**, including related supervisory services. Automatic Sprinkler System means:

a. Any automatic fire protective or extinguishing system, including connected:
(1) Sprinklers and discharge nozzles;
(2) Ducts, pipes, valves and fittings;
(3) Tanks, their component parts and supports; and
(4) Pumps and private fire protection mains.

b. When supplied from an automatic fire protective system:
(1) Non-automatic fire protective systems; and
(2) Hydrants, standpipes and outlets. . . .

**"P-9G" Automatic Commercial Cooking Extinguishing System (a/k/a Ansul system)** consisting of wet chemical fire extinguishing equipment.

The PSE "Schedule" identifies the protective safeguard applicable to the Policy as "P-1." AmGUARD denied coverage because the only fire suppression system in the building at the time of the fire was an Ansul system.

Razuki asserts that the definition of "automatic sprinkler system" in P-1 is ambiguous and can reasonably be read to include an Ansul system. We disagree. A policy "cannot be found to be ambiguous in the abstract," and "must be interpreted as a whole, and in the circumstances of the case," *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other," *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 827 (1990) (quoting Cal. Civ. Code § 1641). The PSE separately identifies automatic sprinkler systems and Ansul systems and provides a different description for each. If "P-1" included Ansul systems, "P-9G" would be "redundant." *Id.* at 838. And, the district court did not abuse its discretion in disregarding Razuki's

3                                                                24-2352

expert's opinion that the policy is ambiguous because expert opinions "cannot be used to provide legal meaning or interpret the polic[y] as written." *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999). Because there was no breach of contract, there was also no breach of the implied covenant of good faith and fair dealing. *See Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990).

2.      Razuki asserts that AmGUARD should be barred from arguing that the Policy excludes coverage because the insurer (1) failed to inspect the building prior to the fire to verify whether it had an automatic sprinkler system; (2) paid a $50,000 advance for damages caused by the fire without reserving rights; and (3) continued to insure the building until the Policy expired, even after learning that it lacked an automatic sprinkler system. However, Razuki's insurance broker represented that the property had an automatic sprinkler system on a questionnaire that expressly differentiated between an automatic sprinkler system and an Ansul system, and AmGUARD was entitled to rely on those representations. *See Am. Way Cellular, Inc. v. Travelers Prop. Cas. Co. of Am.*, 216 Cal. App. 4th 1040, 1055 (2013). AmGUARD's payment of an advance and its continuation of coverage occurred after the loss, and "the principles of estoppel and implied waiver do not operate to extend the coverage of an insurance policy after the liability has been incurred or the loss sustained." *Dollinger DeAnza Assocs. v. Chi. Title Ins. Co.,* 199 Cal. App. 4th 1132, 1154 (2011) (cleaned up).

3. Razuki argues that the district court abused its discretion in considering the testimony of an AmGUARD claims manager who authenticated records from Razuki's claim file because the manager lacked personal knowledge of both AmGUARD's handling of Razuki's claim and the creation and maintenance of AmGUARD's records. But the claims manager testified, and Razuki does not dispute, that she had access to AmGUARD's claim file, it was "prepared in the regular course of business at or near the time of the acts, conditions or events recorded," and she was familiar with AmGUARD's investigation of Razuki's claim. She was thus a "qualified witness" under Federal Rule of Evidence 803(6). *See United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990), *as amended on denial of reh'g* (Apr. 23, 1991).

Razuki also argues that the claims manager was not credible because her declaration in support of a prior motion for summary judgment misidentified one document. However, her later declaration, the one at issue in this case, correctly identified the document. *See U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1045 (9th Cir. 2009).

4. The district court did not err in dismissing Razuki's UCL restitution claim. Razuki did not plausibly allege that he lost "money or property" as a result of AmGUARD's alleged unfair business practices, *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 452, 455 (2005), or that he lacked an adequate remedy at law, *see*

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (holding that a federal-court plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL").

**AFFIRMED.**