**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

JANUARY 15, 2026

*Stephe, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JANUARY 15, 2026

*Sarah Pendleton*

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON | NO. 103469-5 |
| Respondent, | |
| v. | EN BANC |
| BARCLAY DYLAN BENNETT, | Filed: January 15, 2026 |
| Petitioner. | |

STEPHENS, C.J. — Barclay Dylan Bennett appeals his conviction for first degree assault, arguing that the trial court violated his Sixth Amendment right to confrontation when it admitted an unavailable witness's statement to a police officer suggesting that Bennett had a motive to commit the crime. U.S. CONST. amend. VI. The trial court allowed the State to introduce that statement only in response to other statements, first offered by Bennett, made by the same declarant as part of a single continuous interview with the officer. The court concluded that Bennett had "opened the door" to its admission. Verbatim Rep. of Proc. (VRP) (Aug. 30, 2022) at 301.

1

As the parties' arguments have developed on appeal, the issue has been framed in terms of several related doctrines: open door, invited error, curative admissibility, and waiver—all principles that may allow for the admission of otherwise inadmissible evidence in response to one party's actions. We need not explore these doctrines in depth or decide which one applies because the statement at issue here falls within the rule of completeness. This rule has deep roots in the common law and has been formalized in ER 106. It provides, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it." ER 106.

The rule of completeness most often arises as a justification for allowing otherwise inadmissible hearsay, and at trial, the parties and the trial court characterized the challenged statement as such, with the trial court ruling that Bennett had "opened the door" to admission. On appeal, the State urges us to view the statement in the context of arguments about the adequacy of the police investigation and conclude that it does not constitute testimonial hearsay implicating Bennett's Sixth Amendment confrontation right. Bennett responds that any evidentiary rule allowing for the admission of testimonial hearsay must yield to the

confrontation clause. Suppl. Br. of Pet'r at 10-11 (citing *Hemphill v. New York*, 595 U.S. 140, 154, 142 S. Ct. 681, 211 L. Ed. 2d 534 (2022)).

We agree with the State. Bennett introduced a portion of the unavailable witness's interview statement to show what information the police received during their investigation. Those portions supported an inference that the police knew about but failed to investigate another individual who may have had a motive to commit the assault. The trial court then permitted the State to introduce a subsequent statement from the witness's interview, which supported an inference as to why the investigation focused solely on Bennett. The admitted statement satisfies the rule of completeness because it served to correct the misleading impression left by the statement Bennett introduced. Understood in this context, the admitted statement does not constitute testimonial hearsay, and we need not decide whether the rule of completeness conflicts with the confrontation clause. We affirm the Court of Appeals and uphold Bennett's conviction.

## FACTS AND PROCEDURAL HISTORY

Ralph Kinerson was stabbed on the evening of April 12, 2022. Although the details of the incident are disputed, both Kinerson and Bennett testified that they physically fought that evening. Kinerson testified that he was at his home with an acquaintance, Abbey Pearson, when he heard a knock at the door. Through the peephole, he saw a man with his head down. As soon as he unbolted the door, it was

forced open and he was immediately attacked. He and the other man wrestled to the ground, and the assailant began stabbing Kinerson. During the struggle, Kinerson recognized his assailant as Bennett, the husband of Robyn Roberts, a friend who visited Kinerson occasionally when she was in the neighborhood. Kinerson recalled that somebody eventually pulled the two men apart. His next memory was waking up in the hospital one week later.

Bennett testified that on the evening in question, he had taken a bus to a friend's house to shower because he had no hot water at home. As he walked past Kinerson's home, which he recognized because Kinerson was a "known drug dealer in the area," Kinerson tackled him into the street and began punching him, while a woman pepper-sprayed his eyes. VRP (Aug. 31, 2022) at 409. Bennett testified that he was able to get away but then returned to retrieve his bag after another man told him he had left it behind. He then walked to his friend's house across the street, removed his jacket on the porch, and took a shower to wash off the pepper spray. Bennett testified that he never stabbed Kinerson.

Cori Jackson, a nearby neighbor, witnessed part of the fight. She testified that she heard a commotion while cooking dinner and "peeked" out her front door. VRP (Aug. 29, 2022) at 169. She saw Kinerson on the ground wrestling with a man she did not recognize, while a second man watched from a few feet away and a woman observed from Kinerson's porch. The man on top of Kinerson eventually stood up,

4

walked away, and then returned to retrieve his bag. Jackson saw Kinerson covered in blood and called 911. Later that night, Jackson identified Bennett to Officer Alisha Nguyen in a single-suspect "show-up" identification, describing him as the man she saw wrestling with Kinerson and noting that he had changed his clothes since the incident. VRP (Aug. 30, 2022) at 257. Jackson was unable to identify Bennett at trial.

In addition to Jackson, Officer Nguyen also spoke with the woman on the porch, Abbey Pearson. Pearson provided a description of the suspect but was reluctant to share details about the incident and repeatedly asked for permission to leave. Officer Nguyen did not detain her, and Pearson left. None of the officers spoke with the unidentified man whom Jackson said she saw watching the fight, and he was not present when police arrived.

Officer Xenon Berkeley testified that after Bennett's arrest, he asked how long he might remain in jail before being released "'[c]ompared to that guy falling on his own knife.'" *Id.* at 361. Bennett also made several statements about the "other individual," including, "'I thought we were pals. I thought we were tight. . . . I told you guys he tried to cut me.'" *Id.* at 362. Officer Berkeley further testified that he smelled pepper spray in the car and, based on his training and experience, believed Bennett had been exposed to it.

Detective Devin Presta was assigned to assist with the investigation. He monitored phone calls placed by Bennett to his wife, Roberts, from jail. During a call, Bennett stated, "'[I]t's not like it looks. . . . It looks like I went over and stabbed [Kinerson].'" *Id.* at 284-85. Detective Presta later conducted a follow-up interview with Kinerson's adult daughter, Malea Kinerson.[1] Presta documented her interview in a report, which he referenced while testifying at trial.

The State charged Bennett with first degree assault with a deadly weapon. Prior to trial, the State moved in limine to exclude "other suspect" evidence suggesting that someone else committed the crime. Clerk's Papers at 22. In response, Bennett clarified that he did not intend to argue that Pearson or the unidentified male witness committed the assault but, rather, that the police failed to conduct a thorough investigation. The court reserved ruling, stating that it was "perfectly appropriate . . . to inquire why the [S]tate let a particular witness go" but that if the defense intended to suggest someone else was responsible, an offer of proof was required. VRP (Aug. 29, 2022) at 153. The witnesses who testified at trial included Kinerson, Kinerson's neighbor Jackson, the responding police officers, Detective Presta, a physician who treated Kinerson, and Bennett. Neither Malea nor Roberts were available to testify.

---

[1] We refer to Malea by her first name to distinguish her from her father; no disrespect is intended.

On the second day of trial, outside the presence of the jury, Bennett's counsel renewed a pretrial motion in limine to exclude hearsay. The night before, counsel had learned that Kinerson intended to testify that he knew why Bennett attacked him based on hearsay—specifically, what Bennett's wife, Roberts, had told his daughter, Malea. The State responded that it had instructed Kinerson to limit his testimony to matters within his "first-hand knowledge," and it would not ask questions about what Kinerson's family members had told him. VRP (Aug. 30, 2022) at 191. The court stated, "It shouldn't come up, but if it does, I will stop it." *Id.* at 193. Ultimately, Kinerson did not testify as to why he believed Bennett had attacked him.

That same trial day, the State called Detective Presta. On cross-examination, Bennett's counsel directed Presta to review the written report of the interview he conducted with Kinerson's daughter, Malea, about a month after the incident. Bennett asked, "So in your report, you had indicated that Mr. Kinerson indicated he believed [Pearson] had stolen some of his personal items; is that correct?"[2] *Id.* at

---

[2] It is unclear from the trial transcript whether the report reflects Kinerson's direct statement to the detective or Malea's account of what Kinerson told her. The parties characterize the testimony differently. *Contrast* Suppl. Br. of Pet'r at 7 ("Mr. Bennett elicited that, roughly a month after the attack, Mr. Kinerson told the detective . . ."), *and id.* at 29 ("Mr. Bennett certainly did not waive his right to confront Ms. Kinerson by offering statements by Mr. Kinerson, a different declarant."), *with* VRP (Aug 30, 2022) at 297 (The State argued at trial that this is all "Detective Presta's summation of his conversation with Malea."), *and* Suppl. Br. of Resp't at 22-23 ("[Kinerson] told [Malea] he believed [Pearson] stole from him" is double hearsay if offered for the truth). Regardless, it is clear that all of the statements admitted came from the same report documenting the detective's interview with Malea. Contrary to the concurrence in result's characterization, the parties do not dispute that at least two statements from the report were directly attributed to Malea: "there was a stack of money that was exchanged that night" and "'the suspect assaulted her father because of his relationship with [Roberts].'" VRP (Aug. 30, 2022) at 290, 292; concurrence in

7

290. Presta confirmed, and the State objected on grounds of relevance and hearsay. The court overruled the objection, stating, "I'll let you go a little further with it." *Id.* Bennett then asked, "[D]id Mr. Kinerson indicate he suspected she stole his vehicle?" *Id.* Presta again confirmed. Bennett directed Presta to turn to page two of his report and asked whether Malea "had indicated to you there was a stack of money that was exchanged that night?" *Id.* The State did not object, and Presta confirmed that as well.

On redirect, the State referred Detective Presta back to the same page of his report. Over Bennett's objection on the grounds of hearsay and speculation, the State instructed Detective Presta to read another statement: "'Malea believes [Roberts] and her father are friends, and the suspect assaulted her father because of his relationship with [Roberts].'" *Id.* at 292. The State asked no further questions on redirect.

Outside the presence of the jury, Bennett moved to strike the statement, arguing, "That was something that we had specifically spoke about with Mr. Kinerson not saying." *Id.* at 295. Referring to the trial court's grant of his motion in limine, Bennett objected that "any sort of relationship stuff" constituted hearsay and that he was unable to cross-examine either Roberts or Malea. *Id.* at 296

---

result (Mungia, J.) at 2. In any event, ER 106 is not limited to the same writing or recorded statement; it also permits the introduction of "any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it." ER 106.

8

("[Malea] is not here as a witness. So her personal belief of whether or not her father and [Roberts] had a relationship, we can't cross her on that, so I would ask for a motion to strike.").

The State countered, "[I]t's correct that the statements can be characterized as hearsay," but they are nonetheless admissible because Bennett "opened the door." *Id.* The State emphasized that Bennett was the first to question Presta about a portion of the statements made by Malea, and that the State merely asked "what else Malea told the detective." *Id.* at 297. The State argued that "[a]ll the [S]tate did was complete the conversation." *Id.* The trial court agreed and denied the motion to strike, reiterating that it had overruled Bennett's hearsay objection because Bennett had "opened the door" and could not later "shut it." *Id.* at 301.

Bennett testified and offered his version of events. He stated that he knew Kinerson personally but had limited interaction with him. He also testified that his wife, Roberts, knew Kinerson and had previously used drugs with him. Bennett emphasized that he was not concerned about Roberts spending time with Kinerson and that he "trust[ed] her implicitly," but maintained that "she shouldn't be doing drugs." VRP (Aug. 31, 2022) at 427-28. He testified that he did not believe Roberts was currently using drugs but stated, "[I]f it's happening when I get out, she's got to go to rehab." *Id.* at 436-37. Bennett denied stabbing Kinerson and argued that

failure to investigate other potential witnesses created a reasonable doubt that he was the one who committed the offense. He did not offer any theory of self-defense.

In closing arguments, the State referred to Bennett's testimony to establish motive. The State asserted that "[Bennett] wasn't pleased that [Roberts] had spent time in the past with Mr. Kinerson, and he referenced drug use." *Id.* at 515. The State did not refer to any statements from Malea in its closing argument. The State maintained that Detective Presta and the other officers conducted a thorough investigation.

The jury found Bennett guilty as charged. On appeal, Bennett argued that admission of Malea's statement about his alleged motive violated his Sixth Amendment right to confront the witnesses against him. The Court of Appeals declined to consider this constitutional argument, concluding that "any error in admitting the hearsay evidence was invited by Bennett" through the introduction of Malea's other statements on cross-examination. *State v. Bennett*, 32 Wn. App. 2d 32, 40, 553 P.3d 1150 (2024). The court held that "invited error precludes review even when the alleged error involves a constitutional right." *Id.* at 43.

Bennett petitioned for review, which we granted.

ANALYSIS

The Sixth Amendment's confrontation clause guarantees that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

10

against him." U.S. CONST. amend. VI. This clause applies to prohibit the prosecution from introducing testimonial hearsay against a criminal defendant, unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant about the statement. *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). "Hearsay" is defined as an out-of-court statement offered in evidence to prove the truth of the matter asserted. ER 801(c). A statement offered for purposes unrelated to its truth—such as to provide context or show their effect on the listener—is not hearsay. *Id.* If a statement is not hearsay, the confrontation clause's "'role in protecting the right of cross-examination' is not implicated." *Smith v. Arizona*, 602 U.S. 779, 785, 144 S. Ct. 1785, 219 L. Ed. 2d 420 (2024) (quoting *Tennessee v. Street*, 471 U.S. 409, 414, 105 S. Ct. 2078, 85 L. Ed. 2d 425 (1985)).

Bennett argues the trial court violated his right to confront the witnesses against him when it admitted an out-of-court witness's statement suggesting that he had a motive to commit the assault. He contends reversal of his conviction is required because the erroneously admitted statement was the only evidence suggesting that he harbored strong enough feelings to attack the victim. The State's response to Bennett's claim has evolved over the course of the case, but its core argument remains the same: Bennett suffered no confrontation clause violation and his own actions preclude this constitutional challenge. To provide context for the

11

parties' arguments, we begin by recounting the evidence presented at trial and the parties' arguments as they developed over time.

At trial, Bennett elicited selected portions of an interview between a detective and Kinerson's daughter, Malea, a witness who did not testify. The trial court overruled the State's hearsay objection. In response and over Bennett's hearsay objection, the State offered another of Malea's statements made to the officer in that same interview. Bennett later moved to strike the statement outside the presence of the jury, arguing that the statement was clearly hearsay and that he did not have an opportunity to cross-examine the witness. The State did not dispute that the statement was hearsay but argued it was nevertheless admissible because Bennett had "opened the door" for the State to introduce "what else Malea told the detective" by offering other portions of the interview. VRP (Aug. 30, 2022) at 297. The trial court agreed, ruling the statement admissible because Bennett had "opened the door." *Id.* at 301.

On appeal, Bennett argued that the trial court improperly conflated the open door doctrine with the curative admissibility doctrine, an application the Court of Appeals had expressly rejected in *State v. Rushworth*, 12 Wn. App. 2d 466, 458 P.3d 1192 (2020). He contended that the court's reliance on a "tacit *quid pro quo*"— admitting inadmissible evidence to cure the prejudice caused by previously admitting improper evidence—can never be used to violate a defendant's

confrontation clause rights.  Br. of Appellant at 19 (Wash. Ct. App. No. 39438-7-III (2023)).

In response, the State reframed its theory.  Rather than relying on the open door doctrine, it instead contended that Bennett had "invited [the] error" by "soliciting hearsay testimony" from the detective.  Br. of Resp't at 14 (Wash. Ct. App. No. 39438-7-III (2023)).  The State acknowledged the thematic overlap between the two doctrines but clarified that it was entitled under the invited error doctrine to "[seek] admission of the remaining portion of the statement to be introduced as 'redress for a defendant's evidentiary errors.'"  *Id.* at 18 (quoting *Rushworth*, 12 Wn. App. 2d at 477).  The Court of Appeals affirmed on this alternate ground, agreeing with the State that "Bennett invited any error and therefore cannot raise it on appeal." *Bennett*, 32 Wn. App. 2d at 34.

Bennett now argues that the appellate court's application of invited error was nothing more than a repackaged version of the open door doctrine, a doctrine that the U.S. Supreme Court made clear cannot overcome a confrontation clause challenge. *See Hemphill*, 595 U.S. at 154-55.  Bennett admits that a defendant may, in limited circumstances, waive the right to confront an unavailable witness through the introduction of testimonial hearsay, but he contends that a defendant never waives this constitutional right through the introduction of nonhearsay.  He argues that admission of out-of-court statements that do not implicate the confrontation

clause never justifies the subsequent introduction of statements that do. The State maintains that invited error is the correct framework, but it adds that if reached, no error occurred here because none of the statements qualify as hearsay.

The progression of the parties' arguments illustrates the thematic connection between the various doctrines that may be relevant here, including open door, curative admissibility, invited error, and waiver. Each is a principle of admissibility based on general principles of fairness; when one party introduces evidence, the opposing party may, in certain circumstances, respond with otherwise inadmissible evidence to explain or rebut it. Although the doctrines are distinct, attorneys, courts, and scholars have often applied them interchangeably. 5 ELIZABETH A. TURNER & KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.13, at 7 (6th ed. Supp. 2025); *see, e.g.*, *State v. Korum*, 157 Wn.2d 614, 646, 141 P.3d 13 (2006) (plurality opinion) (referencing invited error while concluding that the defendant may have opened the door); *Rushworth*, 12 Wn. App. 2d at 473 ("The open door doctrine is often conflated with related doctrines pertaining to curative admissibility and invited error."), 475 (citing 5 Karl B. Tegland & Elizabeth A. Turner, *Washington Practice: Evidence Law and Practice* § 103.14, at 76 (6th ed. 2016), as seeming to equate open door with curative admissibility, viz., "fighting fire with fire").

We are less concerned with affixing the correct doctrinal label than identifying the underlying principles of admissibility. In addition, we recognize that even when a court finds evidence admissible under an evidentiary rule, it must be excluded if admission would violate a defendant's constitutional rights. To be properly admitted, evidence must comply with both the rules of evidence and constitutional guaranties.

Our analysis begins by examining the statement's admissibility under the rules of evidence, focusing on the common law doctrine that predates even the confrontation clause: the rule of completeness. We then consider whether the admission violated Bennett's rights under the confrontation clause.

1. The State's offer of Malea's statement satisfies the principle of admissibility under the rule of completeness

The common law rule of completeness traces its origins to at least the early 1600s, and "no doubt was implicitly understood long before that period." 4 JOHN HENRY WIGMORE, A TREATISE ON THE ANGLO-AMERICAN SYSTEM OF EVIDENCE IN TRIALS AT COMMON LAW § 2094, at 468-69 (2d ed. 1923). Based on the notion that carefully selected portions of a statement may unfairly distort the truth, the rule of completeness requires that "'the whole of the utterance on a single topic or transaction must be taken together.'" 21A KENNETH W. GRAHAM, JR. & DANIEL D. BLINKA, 21 A FEDERAL PRACTICE AND PROCEDURE § 5072, at 74 (2d ed. Supp. 2025) (quoting JOHN HENRY WIGMORE, CODE OF EVIDENCE 371-79 (3d ed. 1942)). As

Wigmore explains, this is just "good sense."  WIGMORE, *supra*, at 468.  "We must compare the whole, not because we desire the remainder for its own sake, but because without it we cannot be sure that we have the true sense and effect of the first part."  *Id*. at 466.  At trial, this means that if one party selectively introduces part of a statement that creates a misleading impression, the opposing party may respond by introducing the omitted portion "so far as it relates to the same subject-matter and hence tends to explain and shed light on the meaning of the part already received."  CHARLES T. MCCORMICK, HANDBOOK OF THE LAW OF EVIDENCE § 56, at 132 (1954); *see id.* § 56 n.5 ("'[W]hen a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence.'" (quoting former CAL. CODE CIV. PROC. § 1854, recodified as CAL. EVID. CODE § 356)).

The rule of completeness serves the primary truth-seeking function of our criminal trial process and has not automatically yielded to the confrontation clause at common law.  *See, e.g.*, *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) ("the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process"); *United States v. Nobles*, 422 U.S. 225, 241, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975) ("The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial

system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth."); *cf. Hemphill*, 595 U.S. at 155-56 (declining to decide "[w]hether and under what circumstances that [confrontation clause] rule might allow the admission of testimonial hearsay"). Both rules serve to ensure the integrity of our jury system's fact-finding process, and, in accordance with this purpose, several jurisdictions have determined that once a defendant makes "'the tactical decision'" to introduce selected portions of a statement or recording, the right of confrontation "cannot be used to distort and subvert the truth-seeking function of the criminal trial process by authorizing the admission of evidence in a manner that would mislead the jury." *State v. Brooks*, 125 Haw. 462, 467, 473, 264 P.3d 40 (Ct. App. 2011) (prohibiting the defendant from "introduc[ing] selected portions of [a] statement that were favorable to his defense and, at the same time, us[ing] *Crawford* to preclude the State from introducing other portions of [the same] statement that were necessary to prevent the jury from being misled"); *State v. Prasertphong*, 210 Ariz. 496, 503, 114 P.3d 828 (2005) (the defendant may not "transform[] the Confrontation Clause from a shield to a sword"); *State v. Selalla*, 2008 SD 3, ¶ 52, 744 N.W.2d 802, 818; *United States v. Moussaoui*, 382 F.3d 453, 481-82 (4th Cir. 2004); *cf. United States v. Cromer*, 389 F.3d 662, 670-71, 679 (6th Cir. 2004) (finding that merely *opening the door*, no matter how "foolish [a] strategic

decision[,] . . . will not cause the defendant to forfeit his rights under the Confrontation Clause").

We have followed this line of reasoning in recognizing that the common law rule of completeness applies over a hearsay objection. In *State v. Lowenthal*, 183 Wash. 14, 48 P.2d 909 (1935), defense counsel cross-examined a State's witness about statements they made in a conversation with a third party. On redirect, the State sought to elicit the "balance of the conversation" and introduce statements made by the third party on which the previously admitted statements referred. *Id.* at 17. Defense counsel objected on hearsay grounds, arguing that the remainder of the conversation concerned a collateral matter. *Id.* The trial court overruled the objection, permitting the witness to answer. We affirmed, emphasizing the general rule that "'[w]hen part of a conversation is given in evidence by one party, the whole on the same subject may be inquired into by the other.'" *Id.* at 18 (quoting 2 CLARK A. NICHOLS, NICHOLS APPLIED EVIDENCE 1365 (1928)). If it were otherwise, we explained, parties could effectively place before the jury half-truths, "which are often more misleading than falsehoods." *Id.*; *see also State v. Haywood*, 2 Wn. App. 109, 110, 466 P.2d 859 (1970) (concluding that testimony by a police officer about a conversation with a doctor was admissible after defense introduced part of that same conversation); *State v. Stamm*, 16 Wn. App. 603, 609, 559 P.2d 1 (1976) (holding that because defense counsel cross-examined the witness about a phone

conversation with her son, they could not then object to the prosecution eliciting additional parts of that same conversation on redirect).

In 1975, Federal Rule of Evidence (FRE) 106 was adopted to reflect the doctrine of completeness. FRE 106 advisory committee note, cmt. 2 (2023) ("The intent of the amendment is to displace the common-law rule of completeness. . . . It does not change the basic rule."). In 1979, following the national trend, Washington enacted ER 106 to be "substantially the same as Federal Rule 106." 5 TEGLAND, *supra*, § 106.1, at 142 n.7 (quoting judicial council comment 106). In light of recent federal rule amendments, ER 106 and its federal counterpart are no longer textually identical[3] as applicable to written statements such as the ones in this case. Still, ER 106 is animated by its common law origins and justifications.[4]

---

[3] In *State v. Perez*, Division Two noted that Washington's ER 106 is limited to a writing or a recorded statement. 139 Wn. App. 522, 531, 161 P.3d 461 (2007). *Perez* was decided prior to 2023 amendments that explicitly extended FRE 106 to oral statements. Washington has not amended its rule, but, nonetheless, we have long recognized that the common law rule of completeness applies to oral statements. *See State v. West*, 70 Wn.2d 751, 754, 424 P.2d 1014 (1967) ("Where one party has introduced part of a conversation the opposing party is entitled to introduce the balance thereof in order to explain, modify or rebut the evidence already introduced insofar as it relates to the same subject matter and is relevant to the issue involved."); *Rogers v. Joughin*, 152 Wash. 448, 453, 277 P. 988 (1929) (concluding that the remainder of a conversation was "clearly admissible" where the defendant introduced only a portion of it).

[4] For example, 2023 amendments to the federal rule affirmed that it "does not change the basic rule [of completeness], which applies only to the narrow circumstances in which a party has created a misimpression about the statement, and the adverse party proffers a statement that in fact corrects the misimpression. The mere fact that a statement is probative and contradicts a statement offered by the opponent is not enough to justify completion under Rule 106." FRE 106 advisory committee note, cmt. 2.

Notwithstanding its long history and our broad recognition of the rule, its application remains fairly narrow. The rule of completeness does not contemplate the unfettered admission of an entire statement or conversation once a portion comes in. Rather, it permits an opposing party to introduce *only* those additional parts that are relevant to the issues in a case and necessary to "clarify or explain the portion already received." *State v. Larry*, 108 Wn. App. 894, 910, 34 P.3d 241 (2001); ER 106; FRE 106 advisory committee note (2023) (The rule of completeness "applies only to the narrow circumstances in which a party has created a misimpression about the statement, and the adverse party proffers a statement that in fact corrects the misimpression.").

The rule's narrow scope advances its minimal protective purpose by allowing only evidence that is necessary to contemporaneously contextualize evidence that is already before the jury. Several cases illustrate the proper application of the rule. For example, in *State v. Edwards*, 23 Wn. App. 893, 600 P.2d 566 (1979), a police officer testified that the defendant told him that he had been camping on the date of the first incident of rape and that he did not have an alibi for a second incident. *Id.* at 895. On cross-examination, defense counsel sought to introduce another statement from the same conversation with the officer—specifically, that the defendant had also expressed a willingness to take a lie detector test. *Id.* The court excluded the latter statement, concluding that although all of the statements occurred

in the same conversation, the defendant's statement concerning his willingness to take a lie detector test did not explain, modify, or rebut the truth or accuracy of his statements regarding his activities. *Id.* at 896. As a result, the court held that the subsequent statement did not satisfy the rule of completeness and was therefore properly excluded. *Id.*

Similarly, in *State v. Simms*, 151 Wn. App. 677, 214 P.3d 919 (2009), *aff'd*, 171 Wn.2d 244, 250 P.3d 107 (2011), the Court of Appeals upheld the exclusion of certain statements made by the defendant, finding the omitted statements did not correct a misimpression. At trial, an officer testified that the defendant had identified himself as "Terry Weeks" and claimed "he was from the sovereign state of Alaska." *Id.* at 692. On cross-examination, the defendant sought to introduce additional statements he had made to the officer, including, "'These guys robbed me. They hit me with a hammer.'" *Id.* The State objected on hearsay grounds, and the trial court sustained the objection. In affirming, the Court of Appeals explained that the rule permits admission only of additional statements necessary to clarify or explain the portion already introduced. *Id.* (quoting *Larry*, 108 Wn. App. at 910). Because the defendant failed to show how the excluded statements clarified or related to the admitted portion, the court concluded that the trial court did not abuse its discretion in excluding it as hearsay. *Id.* at 693; *see also United States v. Dorrell*, 758 F.2d 427, 435 (9th Cir. 1985) (finding no violation of the rule of completeness where the

defendant's excluded statements regarding his political and religious motivations "did not change the meaning of the portion of his confession submitted to the jury"); *Larry*, 108 Wn. App. at 910 (concluding that "redacted portions of [defendant's confession] were not necessary to clarify the portions that were introduced").

In contrast, in *United States v. Lopez*, the Ninth Circuit Court of Appeals held that the district court erred by excluding portions of a defendant's interrogation. 4 F.4th 706, 717 (9th Cir. 2021). There, the defendant was indicted on two counts of sex crimes against children. At a pretrial hearing, the Government moved to introduce selected recordings of the defendant's postarrest interrogation in which the defendant appeared to confess he "believed" the child was underage. *Id.* at 713. The defendant objected on the ground that the rule of completeness, FRE 106, required either excluding the clips or admitting the entire recording. *Id.* The district court overruled the defendant's objections, admitted the selected recordings after concluding they were not misleading, and excluded the defendant's offer of additional footage as inadmissible hearsay. *Id.* at 713-14.

The Ninth Circuit disagreed, concluding that under the rule of completeness, at least some of the omitted footage should have been admitted to correct the misleading impression that the defendant had confessed to the mens rea required for conviction. *Id.* at 716-17. The court emphasized that "it should have been apparent that the excerpts risked misleading the jury . . . when, in reality, the full recording

22

conveys a different impression." *Id.* at 715. The court explained that "[t]he potentially misleading impact of the Government's video clips . . . should not, in fairness, have been considered in isolation from [the defendant]'s related statements at other points in the interrogation." *Id.* at 716.

The same rationale applies here and we conclude that the State's offer of Malea's statement falls within the narrow scope of ER 106. On cross-examination, Bennett asked Detective Presta about statements made by Malea during an interview that he documented in his report. Presta referred to this report before confirming that "Kinerson indicated he believed . . . [Pearson] . . . had stolen some of his personal items," including "his vehicle." VRP (Aug. 30, 2022) at 290. Bennett then asked Presta to turn to page two of his report after which the detective confirmed that Malea said "there was a stack of money that was exchanged that night." *Id.* On redirect, the State was permitted to offer another of Malea's statements documented on the same page of the report, that "Malea believes . . . the suspect assaulted her father because of his relationship with [Roberts]." *Id.* at 292. The statements all came from a single continuous interview, recorded in a single report. On its face, this is a classic application of the rule of completeness; part of a conversation was introduced in evidence by one party, and the responding party offered the remainder.

However, that is not all we must consider. A statement is admissible under ER 106 only if it serves to explain or clarify the statements already introduced, which

necessarily means it relates to the same subject matter or issue. *West*, 70 Wn.2d at 754; *see also Lowenthal*, 183 Wash. at 18 ("'When part of a conversation is given in evidence by one party, the whole on the same subject may be inquired into by the other.'" (quoting NICHOLS, *supra*, at 1365)). Bennett contends that ER 106 is not satisfied here because the statements do not all concern the same subject. Bennett emphasizes that while the statements he introduced concerned Pearson, the further statement offered by the State focused only on him. But the term "subject" in this context is not defined so narrowly. "Subject" may refer to a statement's grammatical subject (who or what performs the action) or it also may refer to the statement's broader purpose (the larger topic or theme). The rule of completeness is concerned with how statements are used to create or correct a misleading impression. Here, the misleading impression created by the portions of the statement Bennett solicited arose not from the subject of the statement itself—Pearson—but from the purpose for which it was introduced (to show that the police failed to investigate other leads).

The situation is similar to that in *State v. Iverson*, 126 Wn. App. 329, 108 P.3d 799 (2005), where an officer was allowed to testify about a statement made by an unavailable witness about her identity. There, officers were dispatched to the apartment of a woman who had a protection order against the defendant and who, when they arrived, identified herself as the person named in the order. *Id.* at 332. Although the woman was unavailable to testify at trial, the Court of Appeals upheld

the admission of her self-identification, explaining that if the statement had been offered to prove the woman's identity, it would have been hearsay. *Id.* at 336. The court reasoned, however, that because the statement was not offered for its truth, but rather *to explain why* the officers proceeded with further investigation, it was not hearsay and was therefore admissible. *Id.* at 337; *see State v. Chenoweth*, 188 Wn. App. 521, 531, 354 P.3d 13 (2015) (victim's out-of-court statements to witnesses were not offered for the truth of the allegations but rather to "explain how the allegations came to the attention of law enforcement"); *Williams v. Dep't of Licensing*, 85 Wn. App. 271, 280, 932 P.2d 665 (1997) (a statement by a military gate guard to a security officer that the defendant smelled of alcohol was not offered for its truth but rather as a basis to show why the officer detained the defendant for further investigation).

Here, the parties agree that the statements Bennett elicited on cross-examination were properly admitted for a nonhearsay purpose. Bennett did not introduce Malea's statements to prove the truth of the statements, i.e., that Pearson actually stole from Kinerson or that money was exchanged that night, but rather to challenge the adequacy of the police investigation and the officer's failure to pursue potential leads. This purpose is consistent with the overall theme of Bennett's defense: that police knew about other potential suspects, chose not to follow those reasonable leads, and improperly focused on Bennett. Suppl. Br. of Pet'r at 26

(noting that Bennett introduced Malea's statements to "call into question *why* the police settled on Mr. Bennett without investigating Ms. Pearson" (emphasis added)). To ensure a full and fair understanding of this evidence, ER 106 permitted the State to offer a fair and complete account of the statements in Detective Presta's report.

We therefore consider whether the statement elicited by the State—"'Malea believes [Roberts] and her father are friends, and the suspect assaulted her father because of his relationship with [Roberts]'"—satisfies this standard. Bennett argues that the State offered Malea's statement as evidence of his guilt. He contends that unlike the nonhearsay statements he offered, the State offered this statement for its truth—that Bennett had a motive for committing the assault. The State disputes this characterization, asserting that it offered the statement in rebuttal to show what else Malea told the officers that day in order "to give the jury the entire context."[5] Suppl. Br. of Resp't at 1.

The record supports the conclusion that none of the statements constitute hearsay. Relevant here is how they were used. At trial, the State explained that Bennett was the first to question Detective Presta about a portion of the statements made by Malea and that "this is all Detective Presta's summation of his conversation

---

[5] As noted, the State's argument has evolved over the course of the appeal. At trial, the State described the detective's entire interview with Malea as hearsay. VRP (Aug. 30, 2022) at 296. It maintained this position in the Court of Appeals, but it now agrees that the statements Bennett introduced were *not* hearsay because they were offered for a nonhearsay purpose. And the State contends that, like Bennett's statements, its own offered statement is nonhearsay because it was offered to rebut the misleading impression created by previously admitted statements.

with Malea." VRP (Aug. 30, 2022) at 297. The State explained that all it did was "complete the conversation" to "allow for the jury to hear the rest of the story." *Id.* The State never cited Malea's statement in support of a motive theory, and, in fact, it never referenced any of her statements again. In closing arguments, the State instead pointed to Bennett's own testimony to prove motive, noting that he "wasn't pleased that [Roberts] had spent time in the past with . . . Kinerson, and he referenced drug use." VRP (Aug. 31, 2022) at 515.

In addition, the State's offer of Malea's statement supported its position at trial that the officers conducted a thorough investigation. On direct examination, the State asked Officer Nguyen whether the investigation was "complete . . . based on your training and experience?" VRP (Aug. 30, 2022) at 251. Similarly, the State also asked Detective Presta whether it was "situationally dependent what you request to collect or seize?" *Id.* at 270. Presta later responded, "[E]ach investigation is unique, and you have to base the merits of each investigation on how you want to proceed." *Id.* In closing, the State emphasized the officers' testimony that they conducted a "regular, normal investigation" and that they did not interview Pearson because "they had no basis to detain" her because "[s]he wasn't suspected of anything." VPR (Aug. 31, 2022) at 513, 516. The State's offer of "what else Malea told the detective" to rebut the defendant's claim that the officers failed to pursue leads is consistent with the State's overall argument. VRP (Aug. 30, 2022) at 297.

We conclude that all of Malea's offered statements concerned the same subject: what she told the detective and how it affected the investigation. Bennett offered portions of Malea's statements to argue that the police improperly focused on him, despite her interview disclosing information about Pearson. The State, in rebuttal, offered her additional statements to show why the police continued to focus solely on Bennett based on the information learned during the interview. All of the statements were made during a single conversation, and the State's offered statement was used to explain or contextualize the previous statements Bennett solicited. We conclude that the trial court properly admitted Malea's statement for the purpose of completeness under ER 106.

We turn next to Bennett's argument that the admission of the statements violated his confrontation rights.

2. The admission of Malea's statements does not implicate the confrontation clause because the statements were offered for the nonhearsay purpose of showing their effect on the investigation

Bennett argues that even if the portion of Malea's statement offered by the State satisfies the rule of completeness, a rule of evidence cannot override the confrontation clause. He relies on the United States Supreme Court's decision in *Hemphill*, which held that a defendant cannot "open the door" to testimonial hearsay

that violates the confrontation clause. 595 U.S. at 151.[6] We need not address

Bennett's constitutional arguments here because we conclude that the trial court's

admission of Malea's statements did not implicate the confrontation clause. Only

testimonial hearsay implicates the confrontation clause. *Smith*, 602 U.S. at 784. A

statement is not hearsay when offered for the purpose of showing its effect on a

listener, such as why officers investigated in a particular manner. *Iverson*, 126 Wn.

App. at 337; *see Crawford*, 541 U.S. at 60 n. 9 (The confrontation clause "does not

bar the use of testimonial statements for purposes other than establishing the truth of

the matter asserted.").

To determine whether a statement was used for its truth, we identify the

purpose that the out-of-court statement served at trial. *Smith*, 602 U.S. at 793. This

is an independent analysis: we do not "'accept [a State's] nonhearsay label at face

value.'" *Id.* at 794 (alteration in original) (quoting *Williams v. Illinois*, 567 U.S. 50,

106. 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012) (plurality opinion) (Thomas, J.,

concurring in judgment)). Here, both parties introduced Malea's statements to show

---

[6] *Hemphill* did not involve the rule of completeness and the majority declined to decide whether it would permit the introduction of testimonial hearsay vis-á-vis confrontation rights, leaving open the possibility that "a party 'against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder.'" *Id.* at 155 (internal quotation marks omitted) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171, 109 S. Ct. 439, 102 L. Ed. 2d 445 (1988))). Justice Alito's concurrence embraced application of the rule of completeness over a confrontation clause challenge, asserting "if a party introduces all or part of a declarant's statement, the opposing party is entitled to introduce the remainder of that statement or another related statement by the same declarant." *Id.* at 158.

the effect those statements had—whether positive or negative—on the police investigation. Bennett offered portions of Malea's interview with the detective to show that the police had information about a potential suspect other than Bennett but failed to conduct a proper investigation and follow up on all reasonable leads. The State then offered an additional statement from that same interview to show why the investigation focused on Bennett.[7] Both statements served the nonhearsay purpose of showing their effect on the listener—specifically, why the investigation proceeded as it did. Because the statements were not offered for the truth of matters asserted, they do not implicate the confrontation clause and Bennett's Sixth Amendment rights were not violated.

CONCLUSION

Under the rule of completeness, the trial court properly admitted statements made by an unavailable witness during an investigative interview to help correct a misleading impression created by her previously admitted statements from that same

---

[7] The concurrence in result describes this framing as "the State's revisionist history of what took place at the trial court." Concurrence in result (Mungia, J.) at 11. However, both parties' arguments as to their characterization of Malea's statements have evolved on appeal and their current views align. For his part, Bennett now contends that the statements he elicited were nonhearsay but that the State's responsive evidence was hearsay. Suppl Br. of Pet'r at 21 ("The statements Mr. Bennett elicited, however, were not testimonial hearsay because he offered them for a nonhearsay purpose—to show the police had a reason to investigate Abbey Pearson yet failed to do so."). It follows that by offering one contemporaneous piece of evidence from the same statement, the State's purpose was similarly to show that the police did not have a reason to investigate Abbey Pearson. *State v. Mohamed*, 186 Wn.2d 235, 241-42, 375 P.3d 1068 (2016) (we determine a statement's purpose by "evaluat[ing] the context in which the statements were actually offered and used").

interview. We need not consider whether Bennett's actions in soliciting the original statements opened the door to the additional statements or resulted in waiver or invited error because ER 106 supports the admissibility of this evidence. Further, the admission of the statement offered by the State did not violate Bennett's Sixth Amendment right to confront witnesses because, in the context in which the statement was offered at trial, it was not used to prove the truth of the matter asserted but rather to show its effect on the officers' actions, specifically why they focused their investigation on Bennett. We affirm the Court of Appeals.

_____
Stephens, C.J.

WE CONCUR:

_____
Johnson, J.

_____

_____
Madsen, J.

_____

_____

_____
Yu, J.P.T.

_____

_____
Feldman, J.P.T.

31

No. 103469-5

GONZÁLEZ, J. (concurring)—This case is simple. The confrontation clause does not allow a trial judge to admit unconfronted testimonial hearsay to correct a misleading impression presented by a defendant. *Hemphill v. New York*, 595 U.S. 140, 152-53, 142 S. Ct. 681, 211 L. Ed. 2d 534 (2022). But, as the majority properly concludes, the confrontation clause does not prevent a trial judge from admitting a *nonhearsay* statement to show the statement's effect on the listener. Majority at 29 (citing *State v. Iverson*, 126 Wn. App. 329, 337, 108 P.3d 799 (2005)). That is what happened here. We need go no further.

Accordingly, on this narrower ground, I concur.

González, J.

No. 103469-5

MUNGIA, J. (concurring in result)—The rule of completeness serves the limited and targeted goal of preventing a party from misleading the jury by offering only part of a statement when the whole statement tells a different story.  A classic example would be the following.

In a case where the defendant is charged with robbing a bank, the State reads a portion of the defendant's statement where the defendant said:

- I told my two poker buddies while we were playing cards, "I robbed the First National Bank."

The defendant would then be entitled to read the rest of the statement to the jury:

- "And then I told them that I did it by using my spaceship to fly me there and, by using my cloak of invisibility, I was able to sneak past all the security cameras.  And we all busted out laughing."

The second portion would be appropriately admitted under the rule of completeness doctrine because (1) it was made by the same person that made the initial statement, (2) it addressed the same subject as the initial statement, and (3) it corrected a

misleading impression that was created by the initial statement. Each requirement must be met for a statement to be admitted under the rule of completeness.

There are three statements at issue in this case, all relayed by Detective Presta testifying at trial: Statement one was made by Mr. Kinerson. Statement two, which the State and majority attribute to Malea Kinerson, was instead Detective Presta's ambiguous response to a question. Statement three, offered by the State, was clearly attributable to Malea Kinerson.

Here, the trial court admitted statement three, Malea Kinerson's testimonial hearsay statement, over Mr. Bennett's objection. The trial court considered the statement to be hearsay and relied on the open the door doctrine to admit it. The parties now agree that the statement is not admissible under the open the door doctrine.

The majority, however, upholds the trial court's ruling based on the rule of completeness and cites ER 106 as incorporating the common law rule of completeness. The majority errs in holding that the rule of completeness and ER 106 allow the State to admit statement three.

As a prelude to the narrative of this concurrence, the following is a summary of where I disagree with the majority.

- Unlike its federal counterpart, ER 106 does not allow an oral statement to come in under the rule of completeness. Because Malea Kinerson's statement was an oral statement, ER 106, by definition, does not apply. Instead, this case is governed by the common law rule of completeness.

2

- The majority concludes that none of the statements are hearsay. However, the record is conclusive that the State admitted statement three for the truth of the matter asserted, and the trial court understood the statement to be hearsay. A party cannot change the trial court record. To accept a party's assertion, on appeal, that it had a different intent than what the record documents degrades the integrity of the appellate process.

- The majority's argument rests on the assertion that Malea Kinerson made statements one, two, and three to Detective Presta. That is incorrect. Mr. Kinerson is the declarant of statement one. Further, the record shows that statement two was not a statement by a witness at all but was Detective Presta's statement describing whether a witness statement existed: "There is a statement about a third party that she spoke with, but I don't know who that is." 1 Verbatim Rep. of Proc. (Aug. 30, 2022) (VRP) at 290. The three statements were not made by the same person.

- The majority asserts that the statements share the same subject matter because all three share the same hearsay exception. We have never recognized this novel definition of subject matter. Subject matter, instead, must refer to what that statement is asserting; it is not the global purpose for which the statement is admitted.

- The majority asserts that statements one and two were misleading, which allowed the State to introduce statement three: "Malea believes Robyn [(Mr. Bennett's

3

wife)] and her father are friends, and the suspect assaulted her father because of

his relationship with Robyn." 1 VRP at 292. This is incorrect. Statement three

did not somehow clarify or put into context statements one and two.

- The majority claims that Malea Kinerson was unavailable to testify at trial. There

  is nothing in the record to support this assertion.

While the trial court erred, I concur in the result because the error is harmless.

I.    ER 106 DOES NOT APPLY TO ORAL STATEMENTS AND DOES NOT APPLY TO
THIS CASE

The majority grounds its holding in the common law rule of completeness, while

also referring to Washington's codification of that rule in ER 106. Majority at 18-19.

While the common law rule of completeness applies here, ER 106 does not. That rule

unambiguously applies only to writings or recorded statements:

> When a *writing or recorded statement* or part thereof is introduced
> by a party, an adverse party may require the party at that time to introduce
> any other part, or any other writing or recorded statement, which ought in
> fairness to be considered contemporaneously with it.

ER 106 (emphasis added).

The three statements at issue here were not recorded. Instead, they are Detective

Presta's testimony based on notes he took during his police investigation. The declarants

did not have the opportunity to review or approve the statements, and there is some

dispute about who made the statements in the first place. *See* majority at 7 n.2. This lack

of indicia of reliability, and the resulting confusion, is one reason ER 106 does not permit

the admission of oral statements.

The majority acknowledges this limitation of ER 106 in a footnote but suggests that because Federal Rule of Evidence 106 was amended to include oral statements, Washington's rule must be interpreted that way as well. Majority at 19 n.3. The plain language of the rule cannot be cast aside so lightly. The majority does not meaningfully engage with the text of the rule or otherwise attempt to divine the court's intent in adopting it. Indeed, the majority's only support for its contention that the rule applies to oral statements is two cases decided *prior* to our adoption of ER 106, in which the court admitted oral statements under the common law rule of completeness.

Until this court adopts an amendment to ER 106 through the normal rule-making process, ER 106 does not apply to this case. The majority is incorrect to rest its holding on ER 106. I accordingly conduct my analysis by reference to the common law rule of completeness.

## II.    THE TESTIMONY AT ISSUE IS HEARSAY

The State offered Malea Kinerson's testimony that she believed Mr. Bennett had assaulted her father because her father was seeing Mr. Bennett's wife. The prosecutor offered this testimony to provide a motive for the assault. In other words, the prosecutor offered the testimony for the truth of the matter asserted.

The defense objected on the basis that the statement was hearsay. The prosecutor did not deny that the statement was hearsay and instead argued that the hearsay was admissible because the defense opened the door. Likewise, the trial judge treated the

statement as hearsay and overruled the defense objection because the defense attorney

had opened the door to hearsay testimony.

In the following transcript, Mr. Bennett's counsel questioned Detective Presta

about his police report where he documented his discussions with Mr. Kinerson and his

daughter, Malea.

BY [DEFENSE COUNSEL]:

Q . . . .

So in your report, you had indicated that Mr. Kinerson indicated he
believed this Abbey person had stolen some of his personal items; is
that correct?

A [DETECTIVE PRESTA]: Correct.

[STATE'S COUNSEL]: Objection. Relevance and hearsay.

THE COURT: I'll let you go a little further with it, Counsel.

BY [DEFENSE COUNSEL]:

Q As far as stealing some of his personal items, did she—did
Mr. Kinerson indicate he suspected she stole his vehicle?

A Yes.

Q Going back to page 2 of 4, Mr. Kinerson's daughter, Malea, had
indicated to you there was a stack of money that was exchanged that
night?

A Let me refer to the report. I remember—

Q Sure.

A —there being a statement about that. There is a statement about a
third party that she spoke with, but I don't know who that is.

6

. . . .


REDIRECT EXAMINATION

BY [STATE'S COUNSEL]:

Q      Detective Presta, page 2 of 4 of your May 17, 2022, report, middle
       paragraph, it starts with, "Malea believes"—

A      Okay.

Q       Can you read it to yourself.  Do not read it out loud.  Read that
        paragraph, and let me know when you're done.

A      Okay.

Q      Did Malea tell you that she believed the incident occurred—

       [DEFENSE COUNSEL]: Objection, Your Honor.

       THE COURT: I don't know―

       [DEFENSE COUNSEL]:  *Hearsay* and a speculation.

       THE COURT:  Overruled.

       [STATE'S COUNSEL]:  Thank you.

BY [STATE'S COUNSEL]:

Q      Just read this second sentence, the one that begins with "Malea
       believes".

       . . . .

A      It states, "Malea believes Robyn and her father are friends, and the
       suspect assaulted her father because of his relationship with Robyn."

1 VRP at 290-92 (emphasis added).

7

The trial court took a break after this testimony. Before the jury returned, Mr. Bennett's attorney renewed the objection to strike the testimony.

[DEFENSE COUNSEL]: All right. We—I would like—I am asking for the Court to instruct—or I am asking for a motion to strike the comments made by Officer Presta regarding Robyn and Ralph, all of that.

I know that we had objected at the time and a motion, and you did overrule it. I did want to just refer back to our motions in limine. That was something that we had specifically spoke about with Mr. Kinerson not saying anything about that relationship.

I had thought it was applied towards all the witnesses who had knowledge of a particular relationship. I didn't think it was going to come in with Presta—Officer—sorry—Detective Presta until it was brought in.

So I am asking for a motion to strike based on the fact that it is our motion in limine that there can't be any sort of relationship stuff *because that is hearsay*. We don't—we can't cross-examine Robyn nor can we cross-examine Makalya—or Malea—I'm not sure.

[STATE'S COUNSEL]: Malea.

[DEFENSE COUNSEL]: Malea Kinerson. She is not here as a witness. So her personal belief of whether or not her father and Robyn had a relationship, we can't cross her on that, so I would ask for a motion to strike.

THE COURT: Okay. Thank you so much, Counsel.

[State's Counsel?]

[STATE'S COUNSEL]: Your Honor, thank you.

*It's correct that the statements can be characterized as hearsay.* The problem is, is defense opened the door when they went into a line of questioning with Detective Presta.

[Defense Counsel] specifically asked Detective Presta about interviewing the daughter of Mr. Kinerson. That is Malea. And at a point, maybe there or a few words later, the state objected as to relevance and

8

hearsay. The Court overruled the objection. And [Defense Counsel] proceeded to ask the questions, and she asked about Abbey taking money from Ralph. And, again, this is Malea, the daughter of the victim, telling Detective Presta, who writes it in his report.

She also asked about—[Defense Counsel] asked about items being taken by this Abbey lady from Mr. Kinerson, and again, this is all Detective Presta's summation of his conversation with Malea.

So we went through all of that. That all came in. Defense opened the door to the line of questioning when they—they asked the detective about hearsay statements, period. They came in. All the state did was complete the conversation. The comments made to Detective Presta, his notes, his report, recorded all of those things that [Defense Counsel] asked him about.

[Defense Counsel] did not ask him about what else Malea told the detective. And that was that one sentence that I asked Detective Presta to read the paragraph and then read only one sentence. There was an objection made by the defense. Your Honor overruled the objection. And Detective Presta read the statement.

So they opened the door to allowing the state to elicit that testimony because their questioning was definitely hearsay, but they—they elicited it. And because they elicited it, the jury has a right to know—or the rules of evidence allow for the jury to hear the rest of the story.

So they got in what they wanted. The state asked a question, one question, and elicited one statement. So because the defense opened the door, it's—it was appropriate for the state to ask. There's no reason to admonish the jury or have an instruction that strikes that from the record and advises the jury to ignore that statement.

THE COURT: Okay.

[STATE'S COUNSEL]: *All that hearsay* came in, and they should consider all of it.

Thank you.

THE COURT: Counsel?

9

[DEFENSE COUNSEL]: Just a brief response.

[Defense Counsel] did open the door to hearsay with Malea, but specifically directed it at Abbey's actions, not at anything that Abbey said. It was what Abbey did, which had already—we had already talked about that with Officer Nguyen and with Cori Jackson. So we specifically did not ask about anything limited by Defense's motions in limine because we already decided them.

And I don't believe it opened the door to anything about—as far as Abbey's actions, taking things, I don't believe that opened the door at all because Detective Presta took a police report from Mr. Kinerson regarding those stolen items. So that is something that Detective Presta had knowledge about himself, about what Abbey may or may not have done, because he took a police report from Mr. Kinerson. So that is not opening the door. He did that stuff.

Also, [State's Counsel] says that he is just completing the record by having Detective Presta read the one statement that he read, but that is actually not true. There are two statements.

[State's Counsel] knew that he couldn't have Detective Presta read both statements because the first—the first sentence in that paragraph—there are two sentences in that paragraph. Detective Presta read the second one verbatim. The first sentence directly goes against defense's motions in limine.

So they knew they were violating the motions in limine because the second statement came in but not the complete, full, record, which is—the argument here is that they need to know the whole story. But they actually don't need to know the whole story because you have already ruled that the whole story doesn't get to come in, based on our motions in limine prior.

So I would still ask that the statement Malea believes Robyn and her father are friends and the suspect assaulted her father because of his relationship with Robyn be stricken from the record.

THE COURT: Thank you.

[State Counsel], anything else?

10

[STATE'S COUNSEL]: Just so the Court understands, I will read to Your Honor the first sentence that I admonished Detective Presta not to read in the 3.5 hearing and the Court discussed as well.

The first sentence is this, as follows: Malea believes the incident involved Robin Bennett, who has a restraining order against her husband, the individual whom [sic] stabbed her father.

That involves the protective order that Mr. Bennett is not on trial for. Hence, why I told Detective Presta to only read the second sentence.

. . . .

[THE COURT]: All Right. So thank you, Counsel, for the motion. I think this is appropriate that we address this before the jurors come out, although I suspected this is what we were going to be talking about when my JA [(judicial assistant)] told me you had an issue to discuss outside the presence of the jury.

So I am not going to strike the comments about Robyn and Malea, if you will, made by Detective Presta for a couple of reasons. But, primarily, *I am satisfied that Defense opened door here*, and there's a couple ways to approach this, but one way is just to leave it alone. You know, one way is to let the state just sort of complete going through the door and ask to the extent they feel necessary.

But, here, *once the defense opened the door, I did allow the state to proceed*. It was limited because that door has been opened. The general theory, if you look in Mr. Tegland's comments, you don't get to open the door and shut it or partially shut it because you have allowed it to be opened.

Defense did object, though. I will make that clear for the record though. Counsel did a good job of that when the state attempted to proceed, and I overruled that objection. *So I overruled it because I thought the door had been opened.*

1 VRP at 295-302 (emphasis added).

In summary, Mr. Bennett's counsel questioned Detective Presta first about what

Mr. Kinerson told him (statement one) and then about what Mr. Kinerson's daughter

Malea Kinerson had told him (statement two). The State then admitted testimonial

hearsay from Malea Kinerson on a different topic (statement three). Both parties and the

court understood that the State sought to introduce hearsay, but the court overruled the

objection based on the open the door doctrine.

III.      THE TRIAL COURT ERRED WHEN IT OVERRULED MR. BENNETT'S OBJECTION ON THE BASIS THAT MR. BENNETT OPENED THE DOOR TO THE HEARSAY TESTIMONY

The trial court overruled Mr. Bennett's objection on the basis that Mr. Bennett had

opened the door, allowing the testimonial hearsay to be admitted. This was error. The

open the door doctrine does not permit a court to admit unconfronted, testimonial hearsay

in violation of the confrontation clause.

Under the open the door doctrine, a party may introduce evidence that is barred for

policy reasons if the party that benefits from exclusion introduces the evidence first.

*State v. Rushworth*, 12 Wn. App. 2d 466, 474, 458 P.3d 1192 (2020). However, the open

the door doctrine cannot be used to circumvent the constitutional protection of the

confrontation clause. *Hemphill v. New York*, 595 U.S. 140, 142 S. Ct. 681, 211 L. Ed. 2d

534 (2022).

Here, the open the door doctrine did not allow the State to introduce statement

three, and the trial court erred in ruling that it did. Neither the parties, the Court of

Appeals, nor the majority argues that the open the door doctrine permits the State to

introduce unconfronted testimonial hearsay.

IV.    THE STATE ADMITTED THE OUT OF COURT STATEMENT FOR THE TRUTH OF THE
MATTER ASSERTED

On appeal, the State attempts to recharacterize the hearsay statement that was admitted into evidence as a nonhearsay statement.  The State cannot revise that history.  An appellate court reviews whether a statement is hearsay de novo.  *State v. Rocha*, 21 Wn. App. 2d 26, 31, 504 P.3d 233 (2022).  However, the parties are bound by the record, and the record does not support the majority's conclusion that the statements are nonhearsay.

For the majority to sustain its conclusion that statement three was nonhearsay, it accepts the State's revisionist history of what took place at the trial court level:

> Bennett introduced a portion of the unavailable witness's interview statement to show what information the police received during their investigation.  Those portions supported an inference that the police knew about but failed to investigate another individual who may have had a motive to commit the assault.  The trial court then permitted the State to introduce a subsequent statement from the witness's interview, which supported an inference as to why the investigation focused solely on Bennett.

Majority at 3.

The majority mischaracterizes both the State's reason for offering statement three and the trial court's basis for admitting the statement.  The portion of the record excerpted above makes this clear.  The prosecutor, defense counsel, and the trial court all referred to statement three—Malea believes Robyn and her father are friends, and the suspect assaulted her father because of his relationship with Robyn—as hearsay.  They all

13

discussed whether the hearsay statement could be admitted under the open the door doctrine.

Contrary to the majority's characterization, the prosecuting attorney never said that he was offering statement three to show why the investigation focused solely on Mr. Bennett and the trial judge never said he was admitting the statement for that purpose. Indeed, the prosecutor stated that the statement at issue was hearsay. Instead, the State offered the statement to provide the jury a motive for why Mr. Bennett attacked Mr. Kinerson. As discussed above, both parties and the court understood the statement was being admitted for the truth of the matter asserted. The trial judge admitted the hearsay statement because he believed Mr. Bennett had opened the door. The parties are bound by the record, and the record does not support the State's characterization that the statements are nonhearsay.[1]

In addition, if statement three is nonhearsay, as the State asserts, then Mr. Bennett's rights were violated at trial. If, as the majority concludes, the State had offered the evidence for a reason other than the truth, Mr. Bennett could have asked the court to instruct the jury that the statement was not being admitted for its truth. However, because the parties and the court understood that the State introduced the statement for

---

[1] Contrary to the majority's assertion, the parties' "current views" do not "align" on this matter. Majority at 30 n.7. Mr. Bennett continues to assert that statements one and two are nonhearsay but that statement three is hearsay, as he has since trial. Meanwhile, the State argued, for the first time in supplemental briefing to this court, that statement three is not hearsay.

the truth of the matter asserted, Mr. Bennett was denied the opportunity to ask for a limiting instruction.

Moreover, the record does not support that the statement was offered for the nonhearsay purpose of explaining why the police focused on Mr. Bennett. If the State had introduced statement three for that purpose, it needed to show how the two were connected. For example, Detective Presta would have needed to testify to the effect that because of what Malea Kinerson told him, the police quit investigating other leads. Yet, Detective Presta did not testify to that. Indeed, the prosecutor did not even try to make that link in his closing argument.

The argument that statement three was admitted to show its effect on the investigation also fails as a factual matter. The assault occurred on April 12, 2022. Mr. Bennett criticized the investigation because the police did not look for fingerprints, try to get DNA samples, talk to the witnesses who were present at the scene, or get a possible video of the assault from a neighbor. 1 VRP at 383-84. The collection of physical evidence needed to occur shortly after the incident if it was to happen at all. Detective Presta, however, did not talk to Malea Kinerson until May 17, 2022, over a month after the assault. 1 VRP at 289. Any statement that Malea Kinerson made to Detective Presta would not have had any effect on the investigative efforts that occurred a month earlier. Therefore, statement three could not have been asserted for the alleged nonhearsay purpose of showing the effect on the investigation. It is hearsay.

V.    STATEMENT THREE IS TESTIMONIAL HEARSAY

Not only was Malea Kinerson's statement hearsay, but it was also testimonial hearsay.  The confrontation clause bars testimonial hearsay when the defendant does not have an opportunity to confront a witness against them.  U.S. CONST. amend. VI.  "'A statement is testimonial if a reasonable person in the declarant's position would anticipate that his statement would be used against the accused in investigating or prosecuting a crime.'" *State v. Vazquez*, 198 Wn.2d 239, 262, 494 P.3d 424 (2021) (quoting *State v. Hendrickson*, 138 Wn. App. 827, 833, 158 P.3d 1257 (2007)).  Statements taken in the course of a police interrogation are testimonial.  *Crawford v. Washington*, 541 U.S. 36, 52, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Here, Detective Presta took Malea Kinerson's statement during a police interview. The police were investigating Mr. Bennett's connection to the crime, and the statement itself explores Mr. Bennett's motive to commit the assault.  A reasonable person in Malea Kinerson's shoes would anticipate that the statement could be used against Mr. Bennett in prosecuting the assault against her father.  The hearsay statement was testimonial. Because the rule of completeness does not apply in this case, the admission of statement three violated Mr. Bennett's constitutional rights.

VI.    THE RULE OF COMPLETENESS IS NOT SATISFIED UNLESS FUNDAMENTAL ELEMENTS ARE MET

Because the majority concludes that statement three is not testimonial hearsay, the majority does not address whether the rule of completeness overrides a defendant's Sixth Amendment right to confrontation.  I agree with the majority that we need not reach the

confrontation clause issue, but for a different reason: the rule of completeness does not

allow the admission of statement three.

A. The Three Requirements for Admission Under the Rule of Completeness Are Not Met

To take advantage of the rule of completeness, three requirements must be met:

(1) the same person must have made both statements, (2) both statements must have the

same subject matter, and (3) the first statement would be misleading if introduced alone.

*See State v. West*, 70 Wn.2d 751, 754, 424 P.2d 1014 (1967); *State v. Larry*, 108 Wn.

App. 894, 910, 34 P.3d 241 (2001).

Statement three fails each requirement.

The majority opines:

> [W]e conclude that the State's offer of Malea's statement falls within the narrow scope of ER 106.  On cross-examination, Bennett asked Detective Presta about statements made by Malea during an interview that he documented in his report.  Presta referred to this report before confirming that "Kinerson indicated he believed . . . [Pearson] . . . had stolen some of his personal items," including "his vehicle."  VRP (Aug. 30, 2022) at 290. Bennett then asked Presta to turn to page two of his report after which the detective confirmed that Malea said "there was a stack of money that was exchanged that night."  *Id*.  On redirect, the State was permitted to offer another of Malea's statements documented on the same page of the report, that "Malea believes . . . the suspect assaulted her father because of his relationship with [Roberts]."  *Id.* at 292.

Majority at 23 (alterations in original).  The majority improperly analyzes the

requirements for the rule of completeness.  As discussed below, none of the three

requirements are met.

17

1. *The Statements Were Not Made by the Same Person*

The rule of completeness does not apply because the statements were not made by the same person. Mr. Bennett initially introduced two statements from Detective Presta's report. Statement one was made by Mr. Kinerson, not Malea Kinerson: "'Kinerson indicated he believed . . . [Pearson] . . . had stolen some of his personal items,'" including "'his vehicle.'" *Id.* (quoting 1 VRP at 290). Because this statement was made by Mr. Kinerson, it cannot justify introducing a statement made by Malea Kinerson.

The majority claims that it is ambiguous whether Mr. Kinerson or Malea Kinerson made statement one. *Id.* at 7 n.2. This ambiguity is one reason our state's codification of the rule of completeness, ER 106, has not been amended to include oral statements. Oral statements are not subject to proof as are written statements.

However, the origin of the statement is not ambiguous. Detective Presta's testimony made it clear that Mr. Kinerson, not Malea Kinerson, made that statement to him. The question posed to Detective Presta was "As far as stealing some of his personal items, did she—did Mr. Kinerson indicate he suspected she stole his vehicle?" He replied, "Yes." 1 VRP at 290.

Even if we were to accept the State's suggestion that Malea Kinerson relayed Mr. Kinerson's statement to Detective Presta, the statement would not satisfy the rule of completeness. It is undisputed that Mr. Kinerson was the declarant of statement one, not Malea Kinerson.

Regarding statement two, the majority asserts that Malea Kinerson made the statement and that Detective Presta "confirmed that Malea said 'there was a stack of money that was exchanged that night.'" Majority at 23 (quoting 1 VRP at 290). That is not accurate. Detective Presta did not confirm that Malea Kinerson said a stack of money was exchanged.

Instead, the transcript documented the exchange as follows:

Q      Going back to page 2 of 4, Mr. Kinerson's daughter, Malea, had
        indicated to you there was a stack of money that was exchanged that
        night?

A      Let me refer to the report. I remember—

Q      Sure.

A      —there being a statement about that. There is a statement about a
        third party that she spoke with, but I don't know who that is.

1 VRP at 290.

It is incorrect to assert that Malea Kinerson made statement two. Detective Presta did not simply read what Malea Kinerson had told him. It appears Detective Presta was testifying from memory when he said, "I remember . . . there being a statement about that." *Id.* Defense counsel asked, "Mr. Kinerson's daughter, Malea, had indicated to you there was a stack of money that was exchanged that night?" *Id.* This was not testimony, but a question. Detective Presta's actual testimony that "[t]here is a statement about a third party that she spoke with, but I don't know who that is" is not attributable to Malea Kinerson and does not confirm the attorney's assertion, as the majority claims it does.

19

Statement two was not a statement made by Malea Kinerson but instead testimony by

Detective Presta about the presence of a statement in his police report.

Accordingly, neither statement one nor statement two was made by the same

speaker as statement three, Malea Kinerson. Therefore, statement three cannot be

admitted under the rule of completeness.

2. *Statement Three Does Not Concern the Same Subject Matter as the First Two*
   *Statements*

Statement three also fails the second requirement for admission under the rule of

completeness. Statement three does not concern the same subject matter as the first

statements: an exchange of money, theft of property, or Mr. Kinerson's vehicle. Instead,

it concerns Malea Kinerson's belief that the suspect assaulted her father because her

father and Robyn were in a relationship.

The majority expands the well-established, narrow rule of completeness by

changing the rule's second requirement: that both statements must concern the same

subject matter. The majority opines that the subject of a statement is not limited to the

content of the statement itself but can be read broadly to encompass the overall purpose

for which the statement is admitted. Majority at 23-24. It then asserts that the purpose of

admitting statement three was to address the adequacy of the police investigation, and

that this purpose is the statement's subject matter. The majority is incorrect on both

counts. (1) A statement's subject matter is what that statement is asserting; it is not the

global purpose for which the statement is admitted. (2) Statement three was not admitted

for the broader purpose the majority suggests it was—to defend the police investigation. As discussed above, it was admitted for the truth of the matter asserted.

First, the majority is incorrect that the global purpose for admitting the statement—addressing the adequacy of the police investigation—is also the statement's subject matter. The majority cites no support for this proposition. Instead, a statement's subject matter is what that statement is asserting. Here, statement one concerns whether Abbey Pearson stole some of Mr. Kinerson's personal items, including his vehicle. The subject matter of this statement is vehicle theft or perhaps the relationship between Mr. Kinerson and Ms. Pearson. Statement two concerns a stack of money being exchanged between unknown people. The subject matter of that statement is the stack of money being exchanged. Finally, statement three concerns the relationship between Mr. Kinerson and Mr. Bennett's wife. The subject matter of statement three is that relationship and Mr. Bennett's motive to do the assault. Statement three has a different subject matter than the first two statements.

However, the majority opines that all three statements have the same subject matter because they all concern the police investigation. The majority analogizes to three cases to support expanding the subject matter to include the broader purpose for which the statement was admitted. However, the cases do not support the majority's position and, indeed, they do not even discuss the rule of completeness.

*State v. Iverson*, 126 Wn. App. 329, 108 P.3d 799 (2005), discusses the admissibility of a nonhearsay statement. Iverson was charged with violating a protective

21

order and the victim's identity was at issue. *Id.* at 331. The prosecutor offered an

officer's testimony that the person at the home when he responded to the call identified

herself as Cara Nichols. *Id.* at 335. The officer also testified that the jail booking

photograph for Cara Nichols matched the person he encountered at the home. *Id.* This

would normally be hearsay, but the prosecutor explained to the court that they were not

offering the testimony for the truth of the matter. Instead, it was offered to show that the

name Cara Nichols matched the name on the protective order, which explained why the

police continued their investigation. *Id.* at 337. The *Iverson* case does not support the

majority's attempt to expand the rule of completeness.

The majority cites two other cases to support its novel expansion of the rule: *State

v. Chenoweth*, 188 Wn. App. 521, 354 P.3d 13 (2015), and *Williams v. Department of

Licensing*, 85 Wn. App. 271, 932 P.2d 665 (1997). Similarly, neither of these cases

involve the rule of completeness nor even mention that doctrine.

Second, even if we were to accept the majority's expansion of the rule of

completeness, which we should not, statement three was not admitted as evidence of the

police investigation but for its truth. As discussed above, both parties and the court

treated the statement as hearsay, and the court admitted it for the truth of the matter. To

reiterate, there is no evidence suggesting statement three had any effect on the police

investigation. Detective Presta did not testify to that effect, and Malea Kinerson's

interview occurred over a month after the crime, when much of the investigation had

already been completed. On the contrary, all statement three did was to suggest a

22

possible motive for Mr. Bennett to commit the crime. Thus, there is no support for the

majority's assertion that the State offered statement three for the nonhearsay purpose of

addressing the adequacy of the police investigation.

The majority incorrectly concludes statement three concerns the same subject

matter as statements one and two. Its attempt to expand the subject matter analysis is

unsupported by case law and fails as a factual matter as applied to this case.

3. *Statement Three Does Not Correct a Misleading Impression Created by the First Two Statements*

Third, under the requirements of the rule of completeness, the State would be

allowed to introduce the rest of a person's statement if it showed that the initial statement

was misleading.

For example, Detective Presta could have recorded Mr. Kinerson saying, "I later

realized I was mistaken that Abbey stole my money and my car. I found my money the

next day and then learned that my brother came and borrowed my car without telling me.

I apologized to Abbey and told her I was wrong." This hypothetical statement is on the

same subject as the initial statement and shows that the initial statement was misleading.

But of course, that is not what happened. Instead, the State offered statement

three, Malea Kinerson's statement from the police report that

> "Malea believes Robyn and her father are friends, and the suspect assaulted her father because of his relationship with Robyn."

1 VRP at 292. As discussed above, the majority reasons that the statement's subject

matter is the police investigation and that it was misleading for Mr. Bennett to assert that

23

the investigation was inadequate. However, a defendant's theory of the case is not

misleading. It is a theory that can be rebutted. Statement three did not correct a

misleading impression created by statements one and two. Therefore, the rule of

completeness does not allow its admission here.

Under the majority's view, the rule of completeness can be used even when a

party does not show that the prior statement was misleading. Beyond the above-stated

reasons, the majority's expansive interpretation of the rule of completeness is also

incorrect in light of case law.

B. Case Law Requires That the Rule of Completeness Be Applied Narrowly

The purpose of the rule of completeness is to prevent a party from misleading the

jury by offering just part of a statement when the whole statement tells a different story.

The majority acknowledges that the rule's application is narrow. Majority at 20. The

majority even cites opinions demonstrating the proper application of the rule of

completeness: where a party admitted a small portion of a statement that was misleading

without additional information, the additional information was allowed to be admitted.

Yet the majority ignores our precedent that the rule is to be applied narrowly and instead

dramatically broadens its scope.

The following cases, cited by the majority, demonstrate our courts' commitment to

keeping the scope of the rule narrow.

The first case cited by the majority is *State v. Edwards*, 23 Wn. App. 893, 600

P.2d 566 (1979). There, the police officer read Mr. Edwards' statement that he had been

24

camping when the alleged assault took place. *Id.* at 895. The defense then sought to

have another part of that same statement read to the jury in which Mr. Edwards told the

officer he was willing to take a lie detector test. *Id.* Mr. Edwards argued he was entitled

to introduce the statement about the lie detector test to explain the prior statement. *Id.* at

896. However, the court held that the second statement was inadmissible because it did

not "explain, modify or rebut the truth or accuracy" of his earlier introduced statement.

*Id.* The majority correctly recites the court's holding and yet fails to appreciate that the

same is true in this case. Majority at 20. Statement three does not explain, modify, or

rebut the truth or accuracy of statements one and two.

The majority also cites *State v. Simms*, 151 Wn. App. 677, 692, 214 P.3d 919

(2009). In that case, Daniel Simms was charged with robbery. The State introduced his

statement where he falsely told the police that his name was Terry Weeks. Mr. Simms

then moved to admit an additional statement from the same police report: "'These guys

robbed me. They hit me with a hammer.'" *Id.* The trial court denied the motion to

introduce the second statement under the rule of completeness. *Id.* at 693. The Court of

Appeals affirmed, holding that the two statements did not relate to one another. *Id.* The

majority here recites the rule from that case: "the rule permits admission only of

additional statements necessary to clarify or explain the portion already introduced."

Majority at 21. And yet, the majority fails to apply the rule to this case.

In *United States v. Dorrell*, the Ninth Circuit Court of Appeals held that the rule of

completeness did not apply to a redacted confession. 758 F.2d 427, 434-35 (9th Cir.

25

1985). The court held that omitting the defendant's explanation of his political and religious motivation for committing a crime did not change the meaning of the portion of the confession in evidence. *Id.* at 435.

*Larry* is another case involving a redacted confession in which the court concluded that the "admission of the redacted portions of the statement were not necessary to clarify the portions that were introduced." 108 Wn. App at 910. While the majority recites these holdings, it fails to appreciate that the same is true in the case before us: statement three does not clarify or change the meaning of statements one and two.

The majority cites *United States v. Lopez* as an example of when the rule of completeness can be used to correct a misleading impression. 4 F.4th 706, 712 (9th Cir. 2021). In *Lopez*, a man was accused of attempting to entice a minor to engage in sexual activity. The prosecutor introduced selectively edited clips of Mr. Lopez's interrogation footage in which it appears he knew he was chatting online with an underaged girl. *Id.* at 714-15. The Ninth Circuit held that the trial court abused its discretion in not allowing Mr. Lopez to admit the remaining portion of the footage under the rule of completeness. *Id.* at 715.

For example, one of the original statements admitted was "'Um, I was just bored at first, and was on Gmail, and that's when she told me she was 15 [sic], and I was like oh shit.'" *Id.* at 716 (alteration in original). However, when read in context, the full statement showed that Mr. Lopez believed the person he was chatting with was a scammer. The full statement was

> "Um, I was just bored at first, and was on Gmail, and that's when she told me she was 15, and I was like oh shit, *but then that's when the thing started happening in my life and I was like you know what, this can get me into trouble, and then I knew that* [*the "Brit" persona*] *was a scam from the beginning*."

*Id.* (emphasis omitted and added). The court ruled that admitting the remainder of the statement was necessary to correct a misleading impression created by the truncated clip. Here, the majority claims *Lopez* is analogous to this case, ignoring that statements one and two do not create a misleading impression.

Finally, the majority cites *State v. Lowenthal*, 183 Wash. 14, 48 P.2d 909 (1935). There, the State's witness was Mr. Morrison. *Id.* at 17. Mr. Morrison testified that the defendant, Mr. Lowenthal, had hired him to set Mr. Lowenthal's house on fire. *Id.* On cross-examination, the defense attorney questioned Mr. Morrison about a conversation he had had with a third man, Mr. Griffin. *Id.* Under questioning, Mr. Morrison testified that he had asked Mr. Griffin to sign an affidavit that said Mr. Lowenthal hired him to destroy a car. *Id.*

The State, on redirect, asked Mr. Morrison to tell the jury about the rest of the conversation he had had with Mr. Griffin. *Id.* Over objection, Mr. Morrison testified that Mr. Griffin told him that Mr. Lowenthal had, in fact, hired him to destroy the car and that Mr. Morrison had asked him to sign the affidavit. *Id.* at 18.

This is an example where the full testimony was necessary to avoid misleading the jury. After cross-examination, the testimony seemed to suggest that Mr. Morris had asked Mr. Griffin to sign a false affidavit. However, the remainder of the conversation

27

clarified that the affidavit was not false but, instead, was accurate: Mr. Griffin had, in fact, been hired to destroy the car. The remainder of the testimony was correctly introduced because it clarified the statement that was elicited on cross-examination.

*Lopez* and *Lowenthal* are classic examples where, if one party elicits a part of a statement that is misleading, the opposing party is entitled to introduce the remainder of that particular statement. Applying the rules set out in these cases, and reasoning by analogy, statement three cannot be admitted under the rule of completeness.

## VII. CONCLUSION

Malea Kinerson's statement to Detective Presta that she believed Mr. Bennett assaulted her father because her father was seeing Mr. Bennett's wife should never have been admitted. It was testimonial hearsay. It was offered for the truth of the matter asserted. Nothing in the record supports a contrary conclusion.

The trial court erred in concluding that the open the door doctrine allowed this otherwise inadmissible hearsay to be admitted.

ER 106 does not apply to the oral statements at issue in this case, and statement three does not satisfy the requirements to be admitted under the common law rule of completeness. The purpose of the rule is to prevent a party from misleading the jury by using a selective portion of a statement. However, here the three statements were made by different people, involved different subjects, and statements one and two were not misleading.

28

The admission of testimonial hearsay violated Mr. Bennett's right to confront his accuser. However, I conclude that the error was harmless considering both the corrosive impact of the constitutional error and the strength of the properly admitted evidence of guilt. *See State v. Magana-Arevalo*, No. 103586-1, slip op. at 43-44 (Wash. Jan. 15, 2026).

While statement three provided a possible motive for Mr. Bennett to assault Mr. Kinerson, the testimony was somewhat cumulative: Mr. Bennett also testified that his wife knew Mr. Kinerson, that the two had done drugs together in the past, and that he disapproved of her drug use. The State did not mention Mr. Bennett's potential motive again at trial.

Meanwhile, there is substantial evidence of guilt: Mr. Kinerson's neighbor witnessed the assault and identified Mr. Bennett as the attacker one hour after the event. Mr. Bennett's own testimony revealed that he physically fought Mr. Kinerson. After his arrest, Mr. Bennett made a statement to police about "'that guy falling on his own knife.'" 1 VRP at 361. I conclude the corrosive impact of statement three is outweighed by properly admitted evidence of guilt.

Although I disagree with the majority's analysis, I concur in the result.

Mungia, J.

Gordon McCloud, J.

Whitener, J.

30